DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### JUNE TERM, 1879.

---

MAYOR AND ALDERMEN OF JERSEY CITY, PLAINTIFFS IN ERROR, AND THOMAS C. O'CALLAGHAN, DEFENDANT IN ERROR.

1. A land owner who has paid an assessment for benefits may recover by action the money so paid, if such assessment be afterwards set aside.
2. If there be a re-assessment, and the sum so assessed be less than that of the original assessment, the lesser sum should be taken from the larger, and interest given as damages only on it from the date of payment. The case of *Mayor of Jersey City* v. *Riker*, 9 *Vroom* 225, approved.
3. On loans and forbearances of money, the rate of interest agreed upon, or if no rate be agreed upon, the legal rate then prevailing, is the rate that will run until the actual repayment of the money.
4. But where damages for breach of contract, or for torts, are to be assessed, the rate of interest will change as the statutory rate changes during the accrual of the damages.

---

On error to the Supreme Court.

Suit to recover the amount, with interest, of an assessment paid by O'Callaghan, the plaintiff below, to the defendant.

349

Jersey City v. O'Callaghan.

The plaintiff was one of a number of land owners whose property was assessed for benefits arising from the laying of a common sewer. The quota of the plaintiff was $1479.74, which he paid to the city on August 9th, 1872. In the year 1876, another of the land owners carried this assessment to the Supreme Court by a *certiorari*, and had it set aside as to him, and on November 7th, 1877, the same court, on the application of the authorities of Jersey City, and by force of the statute, vacated the entire assessment, and appointed commissioners to make a new assessment, and which commissioners, on May 8th, 1878, assessed against the plaintiff the sum of $420 as his quota of benefits. The suit was to recover from the city the difference between the first and this latter assessment. The verdict was for the plaintiff by the instruction of the court, and interest was allowed on the amount due from August 9th, 1872, to July 4th, 1878, at seven per cent., and from that latter date at six per cent.

For the plaintiffs in error, *Leon Abbett.*

For the defendant, *Gilbert Collins.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The decision in the case of *Mayor of Jersey City* v. *Riker*, 9 *Vroom* 225, is an authority for the doctrine that if an assessment for benefits to land by means of a municipal improvement, has been paid, and such assessment has been subsequently set aside, the person making the payment can recover the sum so paid by an action at law. In the present instance the defendant in error paid, under such circumstances, the amount assessed against him, and such tax having been annulled by the Supreme Court, at the instance of the authorities of Jersey City, and by the authority of the statute, it is now insisted that as such payment was voluntary the present recovery should not be sanctioned. This position challenges the rule as established in the adjudged case, and consequently the grounds of that rule have been re-examined,

but such reconsideration has not in any respect altered the views then expressed, for it seems very manifest that the principle then adopted is the only one that will square with correct theory if law is, in this field, to be a dispenser of justice. No more forcible illustration of the truth of this remark can be presented than the instance now before this court, for this city, acting on its own volition, has had this assessment set aside, and it now appears, by the showing of its own officers, that such assessment was both illegal and unjust, for the burthen that was put upon this land owner instead of being $1479.74 should have been but $420; and the result is that, if the adopted rule is to be discarded, the city can retain, as it is now struggling to do, this large surplus beyond what is right and legal. Principles of law, when intelligently applied, do not lead, as their sole product, to an inequitable result; and nothing but injustice would be served by an admission of the doctrine that when a tax has been adjudged to be illegal, the moneys unjustly collected under it can be retained. It is said in the brief of counsel of the plaintiffs in error that the opposite rule is a hard one for cities, but the conclusive answer to this is that it is the rule of honest dealing; and the legal system would seem much out of joint that would permit the retention of moneys after a judicial decision that the person with whom they were lodged had no right to them.

Nor do I find, as appears to be supposed in the brief of the counsel of the plaintiffs in error, that the decision in the case reported in 9 *Vroom* is opposed to the adjudications of the Court of Appeals of the State of New York, but to the contrary, I perceive that in the case of *Peyser* v. *Mayor*, &c., 70 *N. Y.* 479, it was directly decided, as in the Riker case, and by the same course of reasoning, that when an assessment that had been paid was afterwards adjudged to be void, the reversal of the assessment was conclusive that the money had been obtained without right, and that it was recoverable by action. And this decision, so far as has been observed, has never been questioned or in anywise modified.

The doctrine upon which the case of Jersey City *v.* Riker is based, is to be considered as settled in this state.

Nor is that doctrine to be affected, as is urged, by so slight a circumstance as the fact that this assessment was not set aside by the action of the party seeking a return of the money, but by the action of the municipality itself. Such an incident cannot impair the land owner's title to the money, for the city's right to keep it has no other foundation than the assessment, and that failing, the right ceases, and the obligation to repay it becomes as well a legal as a moral duty. The cardinal consideration is that the public has lost all just claim to the money, it mattering not how such a state of affairs was brought about.

So, likewise, the plaintiff in error cannot prevail in its contention that the money recovered should not draw interest from the time of its receipt by the city, because by the judgment annulling the assessment, it is conclusively settled that such money was demanded and received by the public without right. Such a judgment puts the city in the wrong at the time of the receipt of the money, and also during the whole period of its detention, so that it was a constant duty to return the debt without waiting for it to be demanded. The verdict is therefore right in the feature that it embraces interest from the time of the payment of the assessment.

In the last place, the attention of the court was called to the measure of interest that was allowed as damages in this case, such measure being at the rate of seven per cent. from the time of the payment of the assessment to the 4th day of July, 1878, when the statutory rate was changed, and after that event at the rate of six per cent. As the question is one of considerable importance in the management of pecuniary affairs, it has been fully considered by the court, and the following results have been reached.

The subject is necessarily presented under two aspects—first, with regard to what may be called interest proper; and, second, when a rate of interest is taken as a measure of dam-

ages. The distribution of the subject is material, the two branches of it being subject to dissimilar considerations.

Interest proper arises whenever money is lent or forborne with an understanding, express or implied, that an equivalent shall be given for its use, and in such case the rate of interest agreed upon, or, if none such be agreed upon, the rate then existing by law, is, in the absence of any new agreement, the rate to be paid until the return of the money. And this rate prevails notwithstanding any statutory change of the rate of interest during the *interim*. Thus, for example, if at the time of a loan, or of an agreement to forbear the payment of money for interest, the rate of interest as stipulated, or, in the absence of stipulation, as fixed by law, should be seven per cent., such percentage would be the rate payable until repayment of the principal sum, no matter when such principal sum might fall due, and notwithstanding any alteration in the legal rate before such repayment. It is quite understood that there is a contrariety of judicial decisions on this subject, but the rule just stated is considered to be justified by the inveterate and well-known practice with respect to the modes of loaning money in this state. Loans that are intended to run for long periods, and which are designed to stand as permanent investments, are usually, in form, made payable after short terms of forbearance, so that, as a question of intention, it is not a strained construction of such transactions to imply, after pay day has arrived, a renewal of the agreement with respect to interest, and that the loan is continued by mutual consent upon the original terms. Therefore, on loans and on forbearances, the original rate of interest will rule until the repayment of the money, unless the rate shall have been altered by a new agreement between the parties. In such cases, it is interest and not damages that is to be assessed.

But when agreements other than those for the loaning or forbearing of money on interest are broken, another and different rule obtains, for in such cases, as well as in cases for torts, damages, and not interest, are to be admeasured. When, for

instance, goods are sold on a specified credit, and are not paid for at the time stipulated, the contract of sale is broken, and the vendor is entitled to a recompense for the loss occasioned by the detention of the money. In such instance there is no interest due, as there is neither a loan nor a voluntary forbearance of money, but there are damages sustained, and the law takes the legal rate of interest as the fair measure of such damages, on the theory that if the money had come to hand it would have produced that rate. The law endeavors to indemnify the party injured, and as the injury consists in the loss of the use of money, such indemnification will be afforded by giving the value of such use, which it is presumed is the interest at the rate fixed by law, and to accomplish this it is obvious that when the rate of interest is changed, the standard of damages is necessarily changed, for to take either the greater or lesser sum of the varying interest would be to use a gauge out of proportion to the loss, and would manifestly fail to produce a just compensation. If the price on a sale of goods should be illegally withheld for two years, the rate of interest during one of such years being seven per cent., and during the other six, to adopt either rate as a standard of damages would be conspicuously a mal-adjustment, as it would not truly indicate the sum of the loss to be repaired. To compensate the party injured, and to do nothing more than to compensate him, the measure of damage should be the rate of interest as it is varied by legislation during the period of damage. In the present case, the legal rate, as it varied, being first seven and then six per cent., was allowed, and that method of allowance was correct.

Nevertheless, there is a mistake with respect to the admeasurement of damages in this case, that must lead to the reversal of this judgment. The city was entitled at the time of the original assessment to the sum of $420 for the beneficial work done to the property of the plaintiff below. The plaintiff has been in the enjoyment of the benefits so conferred from the date of the original assessment, and the consequence is this

sum of $420 should have been deducted, and interest given as damages only on the residue of the sum paid.

Let the judgment be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DAL-RIMPLE, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY, WALES. 14.