NEBRASKA IM-PRUV-ALL, INC., A NEBRASKA CORPORATION, APPELLEE AND CROSS-APPELLANT, v. WILBERT THEODORE SASS, APPELLANT AND CROSS-APPELLEE.

247 N. W. 2d 924

Filed December 22, 1976. No. 40685.

Hurt & Gallant and Daniel A. Smith, for appellant.

Nelson, Harding, Marchetti, Leonard & Tate and Duane L. Stromer, for appellee.

Heard before WHITE, C. J., McCOWN, NEWTON, and BRODKEY, JJ., and RONIN, District Judge.

RONIN, District Judge.

This is a law action in which the Nebraska Im-Pruv-All, Inc., a corporation, plaintiff and a prime distributor for its franchiser, seeks to recover from the defendant

Sass, an area distributor of the plaintiff, on a written franchise agreement for products sold and delivered, and for the additional sum of $1,000 which the plaintiff advanced to the defendant against commissions to be earned by him. The defendant's counterclaim seeks recovery for credits due him on the agreement. At the conclusion of the evidence, the court directed a verdict for the plaintiff in the sum of $2,624.90 and costs, and a verdict for the defendant on his counterclaim in the sum of $390. Defendant appeals and plaintiff cross-appeals as to the judgment entered against it on the counterclaim. We affirm the judgment entered by the court on plaintiff's petition, and reverse the judgment entered on the defendant's counterclaim.

We briefly state the pertinent facts. Plaintiff was a franchisee of Im-Pruv-All, a Nebraska corporation, and was engaged in the business of selling micronutrients for the soil, vitamins and minerals for livestock, and preservatives for fermentable feed. Plaintiff as a prime distributor for its franchiser had the duty to secure and train area distributors and dealers in a prescribed territory in northeastern Nebraska. Area distributors were to have their own warehouses for storage of their products and to also sell as independent businessmen. Plaintiff and defendant entered into a written agreement on February 15, 1974, and accepted on March 5, 1974, which was called the franchise specification sheet, exhibit 2, by which defendant became an area distributor for the plaintiff.

The franchise agreement contained the provision that the defendant was "to receive $125.00 per week draw against commissions earned from sales of products for eight (8) weeks commencing March 1, 1974." Plaintiff performed its part of this provision of the contract by advancing said sums totaling $1,000 to the defendant, which amount has not been repaid by the defendant. The defendant did not receive any commissions for sales made to customers during this 8-week period, but

did the following month. The defendant's sales in accordance with this agreement entitled him to commissions of nearly $12,000. Defendant rented a warehouse to store products purchased from plaintiff pending sales to his customers.

The defendant was concerned from the beginning because of his lack of funds to operate his business. Plaintiff agreed in writing to repurchase products stored in defendant's warehouse in the event his business failed. Defendant was further allowed to sell products on credit. In July 1974, the defendant notified plaintiff that he would not continue to sell products on a full-time basis. He continued his sales on a part-time basis until he received a September 12, 1974, letter from plaintiff specifying his breach of the franchise agreement in a number of respects, and that his distributorship was canceled. Plaintiff thereafter refused to supply defendant with additional products to replenish his inventory. There is no issue on the right of plaintiff to terminate the franchise agreement. On November 25, 1974, plaintiff took possession of the products in defendant's warehouse and credited his account in the amount that he had paid for such products. Plaintiff brings this action to recover the remaining balance due for products sold defendant which was unpaid, and to recover the $1,000 advanced to defendant.

After the termination of the defendant's distributorship, the defendant booked orders from customers to be delivered in the following spring of 1975. Defendant secured similar products from a South Dakota franchisee for these sales. Plaintiff's president, Chris Young, made sales that spring to some of these customers, most of whom were originally customers of plaintiff. These sales occurred after the defendant's distributorship had been ended.

The first assignment of error is whether the defendant is indebted to the plaintiff for the $1,000 advanced to the defendant. The defendant contends that this

provision as to repayment of the money advanced is ambiguous and presented a question of fact as to whether repayment of the sums advanced to him required repayment only if commissions were earned by defendant during the 8-week period that he drew the advancements, and that this question of fact was for the jury to determine. We hold that this provision of the written franchise agreement was clear and unambiguous. The $1,000 advanced by plaintiff to the defendant was a loan which the defendant was legally obligated to pay whether or not he earned commissions during the period of 8 weeks he drew the advancements. The law is clearly established in this jurisdiction that where a provision in a written contract is not ambiguous, the court must determine its meaning as a matter of law. Grantham v. General Tel. Co., 191 Neb. 21, 213 N. W. 2d 439; Bishop Cafeteria Co. v. Ford, 177 Neb. 600, 129 N. W. 2d 581. The trial court was correct in directing a verdict for the plaintiff as to the sum of $1,000 advanced by plaintiff to the defendant.

The defendant further contends that he is entitled to credit for deliveries of the products made by plaintiff in the spring of 1975 to customers from whom the defendant had solicited sales the prior fall after the termination of the franchise agreement of the parties. There had been no completion of the sales of the products to the customers by the defendant. Such sales were made only when the customers accepted the product and paid for it. The booking of orders merely guaranteed the customers future delivery of the product at a specified price. Most of the sales were made by plaintiff to its former customers which it clearly had a legal right to do. After termination of the franchise agreement the plaintiff was entitled to resume business relations with not only its own former customers, but those of the defendant as well, and the defendant was not entitled to commissions on those sales. There was no longer any contractual prohibition for either party to

compete with each other. There was no restraint of trade clause in the terminated franchise agreement. Rambo v. Galley, 188 Neb. 692, 199 N. W. 2d 14; 28 A. L. R. 3d, 25, § 3. The trial court correctly denied the defendant any recovery on his counterclaim for sales made by plaintiff to its former customers where, after the termination of the franchise agreement, the defendant had solicited and booked orders from them.

The trial court entered judgment for the defendant on his counterclaim in the sum of $390 as damages as a result of the plaintiff's violation of the distributorship agreement. The trial court restricted the defendant's recovery to commissions on sales made by plaintiff to customers who had not been initially solicited by plaintiff. The defendant's motion for new trial does not challenge the termination of the franchise agreement by plaintiff for good cause in September 1974. The commissions allowed the defendant by the court were for customer orders booked by the defendant after the cancellation of the agreement and by reason of sales made to them by the plaintiff months later. The defendant's counterclaim alleges that he was damaged by reason of the plaintiff's violation of the distributorship agreement as to these particular sales which were made long after the agreement was canceled. The facts of this case preclude such recovery by the defendant for commissions due under the canceled distributorship agreement with the plaintiff. We hold the trial court should have denied any recovery for the defendant on his counterclaim.

The defendant further contends that he is entitled to credit for products sold to customers, which were subsequently returned to him. The provisions of the distributorship agreement do not sustain this assertion. Item 9 of the agreement (exhibit 2), required the defendant to purchase the products from the plaintiff and to have them shipped to his warehouse. The plaintiff did advance credit to the defendant by maintaining a

security interest in its products purchased by defendant. Section 2-401(2), U. C. C., provides that: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with respect to physical delivery of the goods, *despite any reservation of a security interest* * * *." (Emphasis added.) The trial court was correct in denying the defendant credit for products sold to customers which were subsequently returned.

The last assignment of error of the defendant is that the District Court erred in allowing witness fees for Chris Young and Lillian Young who are the sole officers and owners of all the stock of the plaintiff corporation. They testified as witnesses in this case. Section 33-139, R. S. Supp., 1976, provides for the allowance of witness fees in the District Court as follows: "Witnesses before the district court * * * shall receive twenty dollars * * * each day actually employed in attendance on the court, * * *."

The foregoing statute contains no exceptions to the allowance of witness fees. The language of the statute is plain and unambiguous. No interpretation is required to ascertain its meaning. The trial court was correct in awarding witness fees to Chris Young and Lillian Young.

The trial court was correct in all respects in granting a directed verdict for the plaintiff on its amended petition and against the defendant in the sum of $2,624.90 and costs; and its directed verdict for the defendant on its counterclaim against the plaintiff is reversed and the counterclaim is dismissed.

AFFIRMED AS MODIFIED.