DON J. MCMURRAY CO., A CORPORATION, APPELLANT, V.
BENJAMIN D. WIESMAN, ALSO KNOWN AS B. D. WIESMAN,
APPELLEE.

260 N. W. 2d 196

Filed November 30, 1977. No. 41198.

Carl F. Nielsen of Morsman, Fike, Davis & Polack,
for appellant.

James F. Kasher of Brady, Kasher & Pavel, for
appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH,
MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

This is an action by plaintiff Don J. McMurray Co., a mortgage broker, upon a written contract to recover from the defendant, Benjamin D. Wiesman, a brokerage fee claimed to have been earned by having secured, on behalf of W-F Leasing, Inc., a commitment from Travelers Insurance Company for a long-term loan to finance a real estate development known as the Roman Plaza project, then in the process of construction. The contract in question was executed by W-F Leasing, Inc., by Benjamin D. Wiesman, president. A principal issue in the trial court was whether the fee had been earned and this issue involved interpretation of the contract. The plaintiff sought recovery from Wiesman personally on the theories that it was the intention of the parties that defendant be personally obligated, and, alternately, that W-F Leasing, Inc., was defendant's alter ego and that the corporate veil should be pierced.

A jury was waived and the matter tried before the District Judge who rendered judgment for the defendant. The plaintiff appeals to this court, making several assignments of error which may be consolidated in the following form: (1) The trial judge erred in interpreting the written contract between the parties to require plaintiff to do something more than just secure the loan commitment. (2) The trial judge erred in finding that the defendant was not personally liable on the contract and that the corporate veil should not be pierced.

The contract in question was contained in a letter agreement prepared by the plaintiff and addressed to the defendant individually. The letter agreement, in addition to setting forth the terms and conditions of a proposed loan to W-F Leasing, Inc., contained the following:

"5. The loan would be made to W-F Leasing, Inc., a Nebraska Corporation. There would be no personal guaranty required. . . .

"14. A 2% Good Faith Fee in the amount of $18,000.00 payable to Don J. McMurray Co. is enclosed with the application. If a commitment is issued based substantially in accordance with the terms and conditions outlined in this application, this check would be cashed by the Don J. McMurray Co. and you would be given full credit for this amount at the time of final loan closing as the 2% fee which is our charge for the handling of the loan. If a commitment is not issued based substantially in accordance with the above terms and conditions, then this check would be returned to you and there would be no fee due or payable to Don J. McMurray Co. However, if a commitment is issued on terms and conditions different than set forth in this application, but still acceptable by you, then a fee in the amount of 2% of the loan amount would be due and payable to the Don J. McMurray Co. on the same basis as outlined above." It contained the following form of acceptance, prepared by plaintiff, which defendant executed by affixing the date and signing as president so that the completed acceptance was as follows:

"W-F LEASING, INC.

Date: 11-20-74   Accepted: /s/ Benjamin F. Wiesman, President

B. D. Wiesman                    President"

The evidence shows that, subsequent to the execution of the contract, the plaintiff secured a loan commitment from Travelers Insurance Company which, although containing some conditions different from that in the brokerage contract, was nonetheless accepted by W-F Leasing, Inc., by Benjamin F. Wiesman, president. The loan, however, was never consummated because the period of the commitment expired without W-F Leasing, Inc., having secured execution of a lease by the Goodyear company covering one of the properties involved in the development, this being one of the terms of the commitment. Defendant later secured a commitment and loan from another lender for the same project. The

fee deposit called for by the contract had not been made. Plaintiff demanded payment from defendant for the brokerage fee. Defendant refused to pay and this action was begun.

The trial court interpreted paragraph 14 to require that something more than the securing of a loan commitment was required by the terms of the agreement and that, apparently because the loan was not consummated, the contract had not been fully performed, therefore the fee had not been earned. It also held that the corporate veil should not be pierced and the defendant should not be personally liable. It further found that the evidence would not support a finding that it was the intention of the parties to the contract that the defendant be held personally liable for the brokerage fee. The court said in part: "There is no basis in the evidence to support a finding that it was the intention of plaintiff and defendant that defendant would be personally liable for the fee. The language of the contract indicates just the opposite. All parties concerned with the negotiation of the contract were aware that the proposed interest rate would be usurious if it were required to be paid by an individual. If the parties had intended to provide that this defendant was to be individually liable for the fee, it would have been simple to say so in writing.

"The involvement of a corporate obligor was a benefit to plaintiff - a sine qua non to the execution of the contract. In such a situation there is no justification for 'piercing the corporate veil.' "

Our first inquiry must be, what are the applicable standards by which this court reviews the judgment of the District Court. They are as follows: The trier of fact is to determine a question of interpretation of an integrated agreement if the question depends on the credibility of extrinsic evidence or on a choice among reasonable inferences from extrinsic evidence. Anderson v. Blondo Plaza, Inc., 186 Neb.

682, 186 N. W. 2d 114; Ely Constr. Co. v. S & S Corp., 184 Neb. 59, 165 N. W. 2d 562; Knight Bros., Inc. v. State, 189 Neb. 64, 199 N. W. 2d 720. When the terms of a contract and the facts and circumstances that aid in ascertaining the intent of the parties are insufficient to raise an issue of fact, the interpretation of the contract is a matter of law. Nebraska Im-Pruv-All, Inc. v. Sass, 197 Neb. 261, 247 N. W. 2d 924; Grantham v. General Tel. Co., 191 Neb. 21, 213 N. W. 2d 439. If, therefore, the interpretation of the agreement properly depended upon the consideration of extrinsic evidence, we are bound by the trial judge's determination unless it was clearly wrong. On the other hand, if no factual issue is involved we are free to determine as a matter of law the meaning of the contractual provision in question.

In general it may be said that liability of a proposed borrower to a mortgage broker for securing a loan commitment is governed by the same principles which apply in determining the liability of a seller to a real estate agent for the commission earned by having produced a buyer ready, willing, and able to purchase the listed property, i.e., in the absence of a special agreement to the contrary, the right of a broker to a commission, where the deal he is authorized to negotiate is not consummated, depends upon his production of a customer who is able, ready, and willing to make the desired loan upon terms satisfactory to the principal. 12 C. J. S., Brokers, § 85a, p. 187; 12 Am. Jur. 2d, Brokers, § 194, p. 936; Peet v. Sherwood, 43 Minn. 447, 45 N. W. 859. An implied condition of the contract of employment is (there being no express stipulation concerning the matter) that the borrower has the ability and will tender good title to the security for the loan. Peet v. Sherwood, *supra*. In the absence of an express stipulation to the contrary the right to the commission is not dependent upon the consummation of the loan. 12 C. J. S., Brokers, § 85a, p. 187; Peet v. Sherwood,

*supra.* A broker does not, in the absence of a contractual provision providing otherwise, lose his right to an earned commission because the loan is not consummated on account of the unjustified failure or refusal of the principal to complete the transaction. 12 C. J. S., Brokers, § 95, p. 221; Wisnieski v. Coufal, 188 Neb. 200, 195 N. W. 2d 750.

The plaintiff's position is most easily explained by quoting from its brief: "The above paragraph [14] provides for three separate contingencies. The first contingency concerns the situation where a commitment is issued substantially in accordance with the terms and conditions of the application. The second contingency is when a commitment is not issued based substantially in accordance with the terms and conditions of the application. The third concerns a situation where a commitment is issued on terms and conditions different than provided for in the application but still acceptable to the defendant.

"The first contingency without question provides that the check which was to accompany the loan application was to be cashed when the commitment was issued to pay the plaintiff's fee for securing the commitment and that a credit for the fee would be given at the time of loan closing. The second contingency goes on to provide that the check would be returned to the borrower if a commitment were not issued in substantial accordance with the terms and provisions of the application. It is important to note that the latter provision makes no requirement for the return of the check other than the failure of the issuance of a commitment in accordance with the original terms of the application. There is no mention of any return of the check or reimbursement of proceeds in the event that a loan is not consummated. The third contingency simply provides that if a commitment is issued containing terms different from those contained in the application, but still acceptable to the defendant, a 2% fee is due and pay-

able on the same basis as provided under contingency No. 1 (i.e.) for the plaintiff's fee for obtaining the commitment and the payment of which fee would be given as a credit at the closing of the loan.

"The above paragraph as well as the entire application, is complete and unambiguous. It provides for the circumstances under which a fee is to be assessed, the circumstances when a fee is not to be assessed, the specific dollar amount of the fee in the event that a commitment was issued substantially in accordance with the application, the percentage amount of the fee if a commitment were issued on other terms than specified in the application but still accepted by the defendant, the time that the fee is due and payable, and a provision for crediting of the payment at the time of loan closing. The addition of any other requirement or condition of an actual loan closing for the plaintiff to be entitled to its fee is simply an erroneous and uncalled for construction of the clear language and intent of the parties. There are no conditions or requirements for the earning of plaintiff's fee, other than the issuance of a commitment substantially in accordance with the terms and provisions of the application, or the issuance of a commitment having other terms, but still accepted by the defendant. The fact that a credit was to be given at the closing only indicates more fully that the fee was to be earned at the time of acceptance of the commitment and not upon the closing or consummation of the loan. If there were a requirement for an actual closing of the loan before the plaintiff's fee was to be due and payable, there would certainly not be any necessity of having separate provisions for the three contingencies referred to above."

The above argument is a cogent one. If, as the plaintiff contends, paragraph 14 is clear and unambiguous, there is no need, nor is it permissible, to consider extrinsic evidence for the purpose of contradicting or varying the terms of the contract.

Securities Acceptance Corp. v. Blake, 157 Neb. 848, 62 N. W. 2d 132; Traudt v. Nebraska P. P. Dist., 197 Neb. 765, 251 N. W. 2d 148. We believe there exists an ambiguity in the contract. The agreement recites, "you would be given full credit for this amount at the time of the final loan closing *as the 2% fee which is our charge for the handling of the loan.*" (Emphasis supplied.) If the words "securing the commitment" were substituted for the words "handling of the loan," no possible question could be raised as to the meaning of the contract. The plaintiff would clearly have earned its commission when Traveler's commitment was accepted by W-F Leasing, Inc. It is apparent, however, that no "loan" is made unless the transaction is consummated. It can be argued, of course, that the language mentioned is simply a recital of what the parties contemplate, assuming a loan commitment is made and accepted, i.e., that the loan will in fact be made and the broker will assist in the closing. This is, of course, what is ordinarily contemplated in the usual real estate sales transaction under a listing agreement. Yet if the transaction is not consummated because of some unjustified failure or refusal of the seller to perform, the broker has nonetheless earned his commission. On the other hand, if the actual closing of the transaction is a condition of the broker's right to the fee, then the failure to consummate forecloses the right to a fee. See Cornett v. Nathan, 196 Neb. 277, 242 N. W. 2d 855.

Both parties introduced extrinsic evidence in this case. Much of it relates to the question of whether it was intended that defendant be personally liable for the broker's fee and the question of whether the facts and circumstances require that (assuming the fee was earned) defendant be held personally liable for the corporate debt. Some of the evidence, however, does relate to the question of whether the

parties intended that payment of the fee was contingent upon the closing of the loan.

The extrinsic evidence, received without objection, clearly shows that before the contract was entered into the plaintiff knew that legal title to the real estate, then being developed, was not held by W-F Leasing, Inc., but by defendant; and that in the proposed lease with Goodyear defendant was named as lessor. It may be inferred that when the contract was made, plaintiff knew there was a possibility that even if the commitment was secured the loan transaction might never be consummated. It may be further inferred that it knew W-F Leasing, Inc., had no assets and had been established only for the purpose of later taking title to the project when the permanent financing contemplated by the commitment was finally obtained. The very terms of paragraph 14 show that the plaintiff knew that any commitment finally made and accepted might contain conditions different from those contained in the letter contract. Such, in fact, turned out to be the case. There is the additional fact that the plaintiff waived the fee deposit called for by paragraph 14. Despite this knowledge, the plaintiff nonetheless accepted in form the obligation of W-F Leasing, Inc., to pay the fee, when it might easily have required the personal promise of defendant to pay. All this tends to shed light on the meaning of the term "our charge for the handling of the loan." The language of an ambiguous contract prepared by one party is generally to be given such consideration as the other party would be fairly justified in giving it. Flory v. Supreme Tribe of Ben Hur, 98 Neb. 160, 152 N. W. 295.

The extrinsic evidence, together with the terms of the contract, justified the trial judge's interpretation of paragraph 14. We cannot say on the record that his interpretation is clearly wrong.

One other matter merits discussion. If the extrin-

sic evidence required a finding that W-F Leasing, Inc., or defendant, was acting in bad faith and caused a delay in the execution of the lease with Goodyear in order that the Travelers' commitment would expire so that defendant or his corporation could obtain another commitment upon perhaps more favorable terms, then failure of performance could be attributed to him or it and he might nonetheless (assuming the corporate entity should be disregarded) be liable because the failure of performance was caused by the principal. Wisnieski v. Coufal, *supra*. However, the evidence does not require such a finding of bad faith, but on the other hand supports a finding that the delay was caused only by good faith efforts in negotiation of certain terms of the Goodyear lease.

The evidence, which we do not recite, fully justifies the finding of the court that the parties did not, subsequent to the execution of the written agreement, orally modify the contract to make defendant personally responsible.

Since the trial court's interpretation of the contract was justified from the contractual terms and the inferences from the extrinsic evidence, it is unnecessary for us to consider whether the circumstances would justify disregarding the corporate entity.

AFFIRMED.

BOSLAUGH, J., dissenting.

In my opinion the agreement was not ambiguous and the plaintiff's fee was earned when the commitment was accepted.

SPENCER, J., joins in this dissent.