A.J. TENWOOD ASSOCIATES, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. ORANGE SENIOR CITIZENS HOUSING CO., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 16, 1985—Decided March 27, 1985.

516

Before Judges MICHELS, PETRELLA and BAIME.

*Warren J. Kaps* argued the cause for appellant and cross-respondent A.J. Tenwood Associates (*Kaps & Stern,* attorneys; *Warren J. Kaps,* of counsel; *Warren J. Kaps* and *Anthony P. Pasquarelli,* on the brief).

*Richard D. Wilkinson* argued the cause for respondent and cross-appellant (*Lowenstein, Sandler, Brochin, Kohl, Fisher,*

*Boylan & Meanor*, attorneys; *Richard D. Wilkinson*, of counsel, *Richard D. Wilkinson* and *Lance D. Cassak*, on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Plaintiff A.J. Tenwood Associates (Tenwood) appeals and defendant Orange Senior Citizens Housing Co. (Orange) cross-appeals from a final judgment of the Law Division that (1) awarded Tenwood a final construction payment of $65,198 without prejudgment interest, (2) held that Tenwood was not entitled to a $200,000 Limited Dividend Contractor's Fee by virtue of the fact that the claim therefore was barred by the one year limitation provision contained in its construction contract with Orange, (3) awarded Tenwood $825.50 without interest as the final installment on the Project Planner's Fee, (4) awarded Tenwood $41,921.41 with prejudgment interest at the rate of 12% for its project administration expenses, and finally (5) dismissed Orange's counterclaim with prejudice. Tenwood also appeals from a post-judgment order denying its motion for a new trial on the limited issue of the enforceability of the one year limitation period or, alternatively, to supplement the record, and Orange cross-appeals from an order denying its motion to supplement and amend the findings of fact and conclusions of law and a portion of the final judgment.

The facts giving rise to this appeal have been recounted adequately in the oral opinion of the trial court. We deem it sufficient, therefore, to briefly point out that this matter arises from two written contracts and an alleged oral agreement entered into by Tenwood for the construction of a senior citizens housing project in Orange, New Jersey. Tenwood, a New York corporation authorized to do business in New Jersey, is a general contractor in the field of high rise construction. Orange is a limited dividend housing association structured as a limited partnership consisting of one general partner, Roy Miller (Miller), and three limited partners. Orange was the

owner and housing sponsor of the senior citizens project, which was financed through public funding with a mortgage obtained through the New Jersey Housing Finance Agency (HFA). Orange and Tenwood entered into a contract for the construction of the project on September 22, 1978, agreeing to a base contract price of $4.2 million. The contract also provided for Orange to receive a Developer's Fee of $410,760 from the proceeds of the HFA Mortgage Loan and for Tenwood to receive from Orange a Limited Dividend Contractor's Fee of $200,000.

Pursuant to an amendment to the contract signed September 26, 1978, the Limited Dividend Contractor's Fee was to be paid by January 15, 1979. Orange never paid this fee and apparently took the position that the fee was not owing. Orange suggests that Tenwood, or at least its President, James N. Canino (Canino), has already received the $200,000 by way of a rather complicated sequence of events and changes in the structure of the project at its inception. The trial court did not reach this issue but rather held that Tenwood's claim for the $200,000 was barred by the one-year limitation period contained in Article 39 of the contract.

The parties also entered into a related Project Planner Agreement on May 8, 1978, pursuant to which Tenwood agreed to render technical advice and assistance in the planning and development of the housing project. Compensation pursuant to that agreement totaled $16,510, of which $15,684.50 had already been approved and paid from HFA mortgage proceeds prior to trial. Payment of the remaining $825.50 was at issue at trial and was due upon issuance of the Certificate of Occupancy. This certificate was issued on December 17, 1980, and the trial court awarded Tenwood the $825.50 without interest.

Finally, Tenwood claimed that its President, Canino, and Orange's General Partner, Miller, had entered into an oral agreement for Tenwood to perform the administrative services connected with the project. These services allegedly were to

include preparing and submitting requisitions to the HFA for funding related to the project. Orange and its General Partner, Miller, denied the existence of the agreement, but Canino testified that Miller had approached him and made the offer because of Miller's poor health and his inexperience in construction matters. A letter written by Miller, dated December 22, 1978, corroborated Canino's claim that Miller had suffered poor health during the period in which the parties allegedly made the agreement, despite Miller's denial. According to Canino, he agreed to have the Tenwood staff perform the services in return for compensation covering Tenwood's direct costs, including labor and related expenses, plus eight percent interest. Tenwood apparently administered the project between the Fall, 1978, and the Summer, 1980. In September, 1980, Tenwood's comptroller, Hyman Wolvorsky (Wolvorsky), submitted an invoice to Orange claiming compensation for the project services rendered in the total sum of $41,921.41. Orange refused payment and contested the validity of the contract at trial. The trial court upheld the claim and awarded Tenwood the $41,921.41.

The proofs also established that Tenwood commenced construction of the housing project in November, 1978. In a letter dated April 9, 1980, the HFA concluded that the contractor substantially completed the project on March 24, 1980, and designated March 24 as "the date on which one year guarantees begin for those items which are specified in the contract documents." Tenants started occupying the project in March, 1980, and on December 17, 1980, a construction official from the City of Orange issued a Certificate of Occupancy. On March 22, 1982, following a reinspection of the project site, the HFA found that Tenwood had satisfied the intent of the owner's punch list (which cataloged the items the contractor had to complete to fulfill his obligations under the construction contract) and thereupon released to Tenwood the funds held by the HFA as security during the construction.

Between July, 1981, and July, 1982, Tenwood apparently attempted unsuccessfully to comply with the requisites of the contract for final payment. To obtain final payment pursuant to the contract (a standard HFA form), Tenwood had to submit to the Agency a Contractor's Affidavit containing "a detailed ... statement of all liens, claims, and demands" of subcontractors and other third parties arising from the Contract, a bond to cover such claims, a release of Orange from all liability to the Contractor arising from the Contract (except for certain just claims), and a Certificate of Final Acceptance signed by Orange.

Tenwood submitted drafts of its Release and Contractor's Affidavit in a letter dated July 1, 1982. However, at that time the HFA found the forms did not comply with its requirements and therefore rejected them. Moreover, the HFA made several requests of Orange to sign the Certificate of Final Acceptance between July, 1981, and June, 1982. Orange refused, alleging that it sought to have the project inspected by an independent architect. That inspection never took place, though a Certificate of Final Acceptance signed by the project's architect, Emil N. Steo, was issued as early as April 20, 1981.

At trial, during the testimony of the HFA administrator to the project, William Abele, Tenwood submitted the requisite forms for final payment to the HFA and complied with the bond/escrow requirement insulating Orange from third party claims arising from the contract. Finding that Orange had intentionally delayed issuing its Certificate of Final Acceptance and that Tenwood had now otherwise fulfilled the requirements for final payment, the trial court awarded the $65,198 to Tenwood, without prejudgment interest.

The trial court dismissed Tenwood's remaining claims and the counterclaim of Orange. Thereafter the trial court denied Tenwood's motion for a new trial on limited issues and Orange's motion for partial amendment and modification of the

judgment, taxing costs in favor of Tenwood in the sum of $1,216.10. This appeal and cross-appeal followed.

## I.

█ We are satisfied from our study of the record and the arguments presented that, with the exception of the issues discussed below, the judgment of the trial court and the findings of fact on which it was based were adequately supported by the evidence, the denial of the motion for a new trial and partial amendment of the judgment did not constitute a manifest denial of justice, and all of the issues of law raised were clearly without merit. *See R.* 2:11–3(e)(1)(A), (C) and (E). Furthermore, contrary to Tenwood's claim, there is substantial credible evidence on the record as a whole to reasonably warrant the trial court's findings and conclusion that the September 26, 1978, agreement constituted an amendment to the September 22, 1978, construction contract and that therefore the limitation period contained in the latter document barred Tenwood's claim for the $200,000 Limited Dividend Contractor's Fee. We discern no sound reason or justification for disturbing them. *Leimgruber v. Claridge Associates, Ltd.,* 73 *N.J.* 450, 455–456 (1977); *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–484 (1974); *State v. Johnson,* 42 *N.J.* 146, 162–163 (1964).

## II.

██ Moreover, the one-year limitation period contained in the construction contract executed by the parties on September 22, 1978, was neither unfair nor unreasonable. Although the statutory limitation in this State for actions in contract is six years, *N.J.S.A.* 2A:14–1, such a limitation may be waived by express agreement of the parties. *See Simpson v. Hudson County National Bank,* 141 *N.J.Eq.* 353, 357 (E. & A. 1948). It is fundamental that in the absence of a statute barring such agreements, a contractual stipulation limiting the time for

bringing an action upon a contract to a period less than that prescribed by the foregoing statute is valid if the stipulated period is reasonable and does not violate public policy. *See* Annotation, "Validity of Contractual Time Period, Shorter than Statute of Limitations, For Bringing Suit," 6 *A.L.R.* 3rd 1197, 1207, § 3 (1966). *See also Order of United Commercial Travelers v. Wolfe*, 331 *U.S.* 586, 608, 67 *S.Ct.* 1355, 91 *L.Ed.* 1687 (1947); *Staehle v. American Employers' Ins. Co.*, 103 *N.J.Super.* 152, 154 (App.Div.1968) (citing the A.L.R. annotation and noting that the New Jersey rule comports with the rule in the majority of States). There is persuasive authority holding that contractual provisions which impose a one year period of limitation on actions are not so unreasonable as to constitute a violation *per se* of public policy. *See, e.g., Alderney Dairy Co., Inc. v. Hawthorn Mellody, Inc.*, 643 *F.*2d 113, 118 (3rd Cir. 1981); *Sherwood Jewelers-Newark, Inc. v. Philadelphia Nat. Ins. Co.*, 102 *F.Supp.* 103, 104 (D.N.J.1952); *Staehle v. American Employers' Ins. Co., supra*, 103 *N.J.Super.* at 154. *Accord, Practical Construction Co. v. Granite City Housing Auth.*, 416 *F.*2d 540, 544 (7th Cir.1969); *Hartford Accident & Indem. Co. v. Heftler Construction Co.*, 325 *F.*2d 107, 108 (7th Cir.1963); *Soviero Bros. Contracting Corp. v. City of New York*, 286 *App.Div.* 435, 142 *N.Y.S.*2d 508, 513 (1955), aff'd 2 *N.Y.*2d 924, 161 *N.Y.S.*2d 888, 141 *N.E.*2d 918 (1957). Moreover, the Uniform Commercial Code specifically allows one-year limitations to be included in contracts for the sale of goods. *See N.J.S.A.* 12A:2–725(1).

Beyond this, in the circumstances here present the limitation was manifestly reasonable. Canino had prior experience in HFA projects and thus was familiar with the construction contract, which was a standard HFA form. Canino testified that before signing the contract he reviewed its terms by himself and with James Dugan, Esq., counsel for the project. As Orange points out, Tenwood was free to negotiate amendments to any of the contract terms with which it was dissatisfied, including the one-year limitation period.

Accordingly, the trial court properly held that the one-year limitation provision in the construction contract was valid and that it barred Tenwood's claim to the $200,000 Limited Dividend Contractor's Fee.

## III.

■■ However, we are satisfied that the trial court erred by refusing to award prejudgment interest on the balance of the Project Planner Fee of $825.50 due Tenwood. Generally, the awarding of prejudgment interest is subject to the discretion of the trial court in accordance with principles of equity. *Fasolo v. Div. of Pensions,* 190 *N.J.Super.* 573, 585 (App.Div.1983). *See Manning Engineering, Inc. v. Hudson Cty. Park Comm'n,* 71 *N.J.* 145, 159–160 (1976), vacated on other grounds, 74 *N.J.* 113 (1977); *Bak-A-Lum Corp. v. Alcoa Building Prod.,* 69 *N.J.* 123, 131 (1976); *Reliable Water Co. v. Monroe Tp. Mun. Util.,* 146 *N.J.Super.* 291, 293–294 (App.Div. 1977); *Deerhurst Estates v. Meadow Homes, Inc.,* 64 *N.J.Super.* 134, 155 (App.Div.1960), certif. den. 34 *N.J.* 66 (1961). Moreover, this court will defer to the trial court's exercise of discretion involving prejudgment interest unless it represents a manifest denial of justice. *Fasolo v. Div. of Pensions, supra,* 190 *N.J.Super.* at 585 *See Elizabeth Police Super. Off. Ass'n v. Elizabeth,* 180 *N.J.Super.* 511, 515–516 (App.Div.1981). Our Supreme Court discussed the rationale for awarding prejudgment interest in *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474 (1974):

> At least in the case of a liquidated sum, prejudgment interest has been regarded by our courts as compensatory—to indemnify the plaintiff for the loss of what the monies due him would *presumably* have earned if payment had not been refused. *See Busik [v. Levine], supra,* 63 *N.J.* [351] at 356, 358. The issue is not whether the plaintiff can prove a loss by virtue of having had to pay interest to get the money or by having lost interest from a bank account or investment through removal of the sum therefrom. The loss, rather, is assumed. *See Jersey City v. O'Callaghan,* 41 *N.J.L.* 349, 354 (E. & A. 1879); *Kamens v. Fortugno,* 108 *N.J.Super.* 544, 554 (Ch.Div.1970). The basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the

sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled. *See Small v. Schuncke,* 42 *N.J.* 407, 416 (1964); *Busik, supra,* 63 *N.J.* at 359, 360. This consideration has controlled, and interest has been imposed even where, as here, the defendant had in good faith contested the validity of the claim. Thus, in *Kamens v. Fortugno, supra,* 108 *N.J.Super.* at 552–553, it was held that prejudgment interest on a claim, the amount of which is ascertained, is not avoided by honest disputation over legal liability. The court observed that "defendants had the use of the money and *presumably* earned such interest, dividends or other benefits therefrom as were available," whereas the plaintiff was deprived of any such enjoyment. 108 *N.J.Super.* at 554 [emphasis supplied]. [at 506].

■ Here, pursuant to the Project Planner Agreement, payment of the Project Planner Fee occurred in stages tied to the progress of the construction project:

(1) 80% due at the initial mortgage closing;
(2) Of the remaining 20%,
 a) 5% due upon receipt of the total construction cost;
 b) 5% upon receipt of 50% of the total construction cost;
 c) 5% upon receipt of 75% of the total construction cost; and
 d) the remaining 5% upon issuance of the Certificate of Occupancy.

A construction official from the City of Orange issued the Certificate of Occupancy on December 17, 1980. The contract contained no other prerequisites to final payment of the Project Planner Fee and, unlike the construction contract, did not tie final payment of the Project Planner Fee to the issuance of the Certificate of Final Acceptance or the contractor's affidavit or release. In this case, $16,510 was due under the contract, of which $825.50 or 5% had yet to be paid when this case went to trial. The trial court awarded Tenwood the remaining balance of the fee but did not address whether or not Tenwood also should have received prejudgment interest. We find that, according to the terms of the contract, the remaining 5% or $825.50, was due and owing on December 17, 1980, and we are satisfied that in the circumstances the trial court's denial of prejudgment interest constituted an abuse of discretion. The language of the contract was clear, as were the distinctions between the Project Planner Fee and the final payment of the base contract price. Tenwood was denied payment of the

Project Planner Fee through no fault of its own, but rather through Orange's breach of the contract.

Accordingly, we reverse that portion of the judgment that denied prejudgment interest at the rate of 12% on the balance owing of the Project Planner Fee from December 17, 1980, and remand the matter to the trial court to calculate interest on that sum.

## IV.

We are also satisfied that the trial court erred by admitting into evidence Exhibit P–20, which consisted of an invoice and backup materials in support of Tenwood's claim for $41,921.41 to cover its direct costs and expenses incurred in performing the administrative obligations under the parties' oral contract. The trial court admitted the materials under the business records exception to the hearsay rule, *Evid.R.* 63(13), over objection of Orange's counsel. The rule states as follows:

> A writing offered as a memorandum or record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it is based was made in the regular course of a business, *at or about the time of the act, condition or event recorded,* and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission. [Emphasis supplied].

For a document to be admissible under *Evid.R.* 63(13) as a business record, it must (1) have been made in the regular course of business, (2) at or about the time of the act, condition or event recorded, and (3) the source of the information and method of preparation must justify allowing it into evidence.

Exhibit P–20, which was the only evidence supporting Tenwood's claim to the $41,921.41 incurred while performing the administrative services for Orange, consisted of an invoice and summaries of costs chargeable to Orange, payroll allocation, a statement of office supplies and overhead, and computation of interest on the unpaid balance. Tenwood's comptroller, Wolvorsky, testified that he prepared the Exhibit P–20 in August, 1980. He calculated the labor costs of $32,324.90 by adding up the total compensation for each employee who performed ad-

ministrative services during 1978, 1979, and 1980 based on salary, payroll taxes, insurance, and workers' compensation records. He then interviewed the employees to determine the percentage of the time they allocated to Orange's project administration. Finally, he multiplied those percentages times the total compensation paid to that employee, arriving at a figure representing the cost of that employee's services to Orange. The sum of those costs represented the total labor costs. At trial Orange's counsel objected to the labor cost portion of the invoice worksheets, contending essentially that they did not constitute business records and that the allocation percentages used to calculate the labor costs constituted inadmissible hearsay because based exclusively on interviews with employees conducted substantially after the event recorded.

There cannot be any real dispute that Wolvorsky prepared Exhibit P–20 in the regular course of business and that Tenwood's employees were under a business duty to supply honest information to Wolvorsky. *See Sas v. Strelecki*, 110 *N.J.Super.* 14, 20 (App.Div.1970); *Monarch Federal Sav. & Loan Ass'n v. Genser*, 156 *N.J.Super.* 107, 119 (Ch.Div.1977). However, we conclude that the majority of the payroll allocations were not made "at or about the time of the act, condition or event recorded," as required by *Evid.R.* 63(13). The entry of the payroll allocations for June and July of 1980 certainly satisfied the time requirements of the evidence rule, but the allocations for 1978 and 1979 did not. To be competent, the entire payroll allocation record consisting of various percentages would have had to conform to the standards set forth in the rule. Since the entries dealing with 1978 and 1979 clearly were not prepared within a short time of the act, condition, or event described, the payroll allocation document dealing with 1978 and 1979 was not admissible as a business record under *Evid.R.* 63(13). Consequently, the trial court abused its discretion by admitting into evidence, as part of the invoice, the entire payroll allocation documentation. *See Adams v. N.J. State Fair*, 71 *N.J.Super.* 528, 531 (App.Div.1962). *Cf. State v.*

*Martorelli,* 136 *N.J.Super.* 449 (App.Div.1975), certif. den. 69 *N.J.* 445 (1976).

Accordingly, the award of $41,921.41 for the project administration expenses is reversed and the matter is remanded to the trial court for a new trial on this limited issue. We direct that this issue be retried on the basis of existing records supplemented by such additional admissible evidence of the payroll allocations for 1978 and 1979 as the parties and the trial court deem necessary.

V.

■ Additionally, we are satisfied the trial court erred by permitting Tenwood to levy prebilling interest costs against Orange totalling $6,004.51 in its calculations of its project administration expenses, which amounted to $41,921.41. Tenwood imposed the prebilling interest charges in accordance with the oral contract entered into by Miller and Canino. Orange disputed the existence of the contract, but Canino testified that Miller had agreed to compensate Tenwood for the project administration services it performed at the rate of direct cost plus eight percent interest. Instead of calculating the interest charges at eight percent, though, Wolvorsky computed the interest charges at the rate of prime plus 2 percent. His calculations covered the period from October 1978 through August 30, 1980. Wolvorsky testified that he had relied on an interest rate of prime plus 2 percent because Tenwood was paying that rate on bank loans and on monies lent to it by Miller's partnership pursuant to other projects.

The trial court, contrary to Orange's assertions, found from the testimony that the parties had entered into an agreement for reimbursement to plaintiff for the administrative expenses and that the agreement provided for prebilling interest. These findings and conclusions are amply supported by the evidence and there is no basis for us to interfere with them. However, the utilization of the prime plus 2 percent rate to calculate the

total administrative expenses was improper. Wolvorsky's reliance on a rate of prime plus 2 percent which resulted in an interest rate for the period ranging from 12% to 21.67% ignored the agreement that Canino had made in this matter. Consequently, the trial court erred by adopting Wolvorsky's calculations, mandating a recalculation of the prebilling interest attached to the project administration costs. Thus, on remand the prebilling interest for the administration costs must be recalculated for the period at 8 percent.

## VI.

Finally, we hold that the trial court erred by including as part of the costs taxed in favor of Tenwood the $740 incurred in housing Canino in the Bergen County Jail and transferring him back and forth between the jail and the Bergen County Courthouse during the trial.

The Legislature has authorized trial courts to award costs in *N.J.S.A.* 22A:2–8:

A party to whom costs are awarded or allowed by law or otherwise in any action, motion or other proceeding, in the Law Division or Chancery Division of the Superior Court is entitled to include in his bill of costs his necessary disbursements, as follows:

The legal fees of witnesses, including mileage for each attendance, masters, commissioners and other officers;

The costs of taking depositions when taxable, by order of the court;

The legal fees for publication where publication is required;

The legal fees paid for a certified copy of a deposition or other paper or document, or map, recorded or filed in any public office, necessarily used or obtained for use in the trial of an issue of fact or the argument of an issue of law, or upon appeal, or otherwise;

Sheriff's fees for service of process or other mandate or proceeding;

All filing and docketing and charges paid to the clerk of court;

Such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law, or rule of court.

The policy of our Supreme Court is that each litigant should bear his own expenses in prosecuting and defending his individual interest. *See Sunset Beach Amusement Corp. v. Belk,* 33 *N.J.* 162, 167 (1960).

■ Costs must be awarded in accordance with the provisions of *R.* 4:42–8:

(a) Parties Entitled. Unless otherwise provided by law, these rules or court order, costs shall be allowed as of course to the prevailing party. The action of the clerk in taxing costs is reviewable by the court on motion.

(b) Defendants in Certain Actions. Costs shall be allowed against a defaulting defendant in a replevin action only if he has refused to deliver the subject goods and chattels pursuant to written demand therefor made before commencement of the action. Costs shall not be allowed against a defendant in a quiet title action who defaults or files an action disclaiming any right in the subject property, and a defendant in such action who denies in his answer that he claims or ever claimed any right in the subject property may, by court order, be allowed costs.

(c) Proof of Costs. A party entitled to taxed costs shall file with the clerk of the court an affidavit stating that the disbursements taxable by law and therein set forth have been necessarily incurred and are reasonable in amount, and if incurred for the attendance of witnesses, shall state the number of days of actual attendance and the distance traveled, if mileage is charged.

(d) Effective Date. If a court allows costs to be taxed later than 6 months after entry of a judgment or order, or when the judgment or order becomes the subject of review or further litigation later than 6 months after it has been finally disposed of, the judgment for costs shall not take effect before the entry in the civil docket.

Ultimately, the awarding of costs is subject to the discretion of the trial judge, *Finch, Pruyn & Co., Inc. v. Martinelli,* 108 *N.J.Super.* 156, 159 (Ch.Div.1969), and is said to to be in the nature of incidental damages allowed to indemnify the successful party. *In re Caruso,* 18 *N.J.* 26, 38 (1955); *Kronisch v. The Howard Savings Institution,* 161 *N.J.Super.* 592, 608 (App.Div.1978).

■ It is well-established that a party to a litigation is not deemed a witness and cannot recover witness fees or travel expenses in connection with discovery proceedings or trial. *Modick v. Carvel Stores of New York, Inc.,* 209 *F.Supp.* 361, 365–366 (S.D.N.Y.1962). *See Perlman v. Feldmann,* 116 *F.Supp.* 102, 114–115 (D.Conn.1953). However, officers and directors of a corporation which is a party to an action have been said to be in a different class. *Marcoin, Inc. v. Edwin K. Williams & Co., Inc.,* 88 *F.R.D.* 588, 591 (E.D.Va.1980). Where the interest of a corporate officer or director who appears and

testifies at trial is not shown to be other than the natural concern of an officer for the welfare of his corporation, the courts, both state and federal, will normally award witness fees to the prevailing corporation. *Modick v. Carvel Stores of New York, Inc., supra,* 209 *F.Supp.* at 365–366 (witness fees awarded to prevailing corporation, Carvel, as to officers voluntarily testifying as friendly witnesses); *Perlman v. Feldmann, supra,* 116 *F.Supp.* at 114–115 (fees of officers who testified for prevailing corporation awarded despite corporate status). *See, e.g., Marcoin, Inc. v. Edwin K. Williams & Co., Inc., supra,* 88 *F.R.D.* at 591 (fees awarded to prevailing corporation to cover costs of two officers and two attorneys who testified where their testimony was necessary and indispensable to corporation's case); *Dasher v. Mutual Life Insurance Company of New York,* 78 *F.R.D.* 142, 144 (S.D.Georgia 1978) (Expenses of corporate officers travelling to testify in court awardable in discretion of court); *Electronic Specialty Co. v. International Controls Co.,* 47 *F.R.D.* 158, 162 (S.D.N.Y.1969) (expenses of testifying officers and directors not identifiable as parties in interest allowed as costs); *Nebraska Im-Pruv-All, Inc.,* 197 *Neb.* 261, 247 *N.W.*2d 924, 927 (Neb.1976) (court rule allows awarding of fees for testimony of the two sole stockholders and officers of the prevailing corporation); *Trussell v. City of San Diego,* 172 *Cal.App.*2d 593, 343 *P.*2d 65 (D.C.App.1959) (fees awarded as to testifying officers and employees where no authorities offered to prove they had a private interest in the litigation).

But where the testifying officer or director is an actual party in interest, attends court as a corporate representative, or otherwise is identifiable as a party in interest, the courts generally will deny witness fees for the officer or employee. *Electronic Specialty Co. v. International Controls Corp., supra,* 47 *F.R.D.* at 162; *Modick v. Carvel Stores of New York, Inc., supra,* 209 *F.Supp.* at 365. *See, e.g. Morrison v. Alleluia Cushion Co., Inc.,* 73 *F.R.D.* 70, 71 (N.D.Miss.1976) (fees denied where because witness was the executive officer and

principal stockholder of prevailing corporate defendant court assigned him the role of a party to the litigation); *Gordon Internat'l Adv. v. Charlotte County L. & T. Co.*, 170 *So.*2d 59, 61 (Fla.Dist.Ct.App.1964) (Costs denied where officer who testified for prevailing corporation was corporation's principal officer and had corporate duty to represent corporation at trial).

In cases wherein a corporate officer has attended a trial on some days simply as a representative of the corporate party and on other days as a witness at the same trial, a few courts have awarded costs only for the days the officer testified. *See Simmons v. McLean Trucking Co.*, 100 *F.R.D.* 61, 63 (N.D. Georgia 1983); *Mastrapas v. New York Life Ins. Co.*, 93 *F.R.D.* 401, 405–406 (E.D.Michigan 1982); *Dorothy K. Winston & Co. v. Town Heights Develop., Inc.*, 68 *F.R.D.* 431, 433–434 (D.D.C. 1975); *Hiller v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 60 *F.R.D.* 87, 89 (N.D.Georgia 1973). The rationale for these decisions is that while "witness fees and subsistence fees are not limited to the day the witness actually testifies but include those days in which the witness reasonably and necessarily attends trial," *Mastrapas v. New York Life Ins. Co., supra,* 93 *F.R.D.* at 405–406 (citations omitted), such fees should be "limited to days spent in transit, testifying or waiting to testify and not in advising counsel." *Dorothy K. Winston & Co. v. Town Heights Develop., Inc., supra,* 68 *F.R.D.* at 434. *See American Steel Works v. Hurley Construction Co.*, 46 *F.R.D.* 465, 468 (D.Minn.1969). To allow a corporate party "to call a witness who is also serving in the dual capacity of representative, and then charge the losing party with costs for the entire intervening period allows for too easy a circumvention of the rule prohibiting taxation of costs for the company representative." *Simmons v. McLean Trucking Co., supra,* 100 *F.R.D.* at 63–64.

■ Applying the foregoing principles here, we are thoroughly convinced that the trial court erred by not finding Canino identifiable with Tenwood as a party in interest.

Though serving a jail term on mail fraud charges at the time of trial, Canino continued to serve as the principal officer of Tenwood. Canino was not a shareholder of Tenwood, but his wife, June Canino, had an ownership interest in Excel, which owns 100% of Tenwood's stock. Moreover, at the time Tenwood and Orange entered into the contract at issue at trial, Canino was President of Excel. These circumstances compel the conclusion that Canino had a corporate duty to attend trial and to testify as a witness, and that the trial court therefore erred by awarding costs for the expenses associated with Canino's presence at trial, including for the days he testified.

Accordingly, except to the extent discussed above, the judgment and the post-trial orders under review are affirmed and the matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion. We do not retain jurisdiction.