754 A.2d 586 (2000)
333 N.J. Super. 52
William G. MUSTO, Plaintiff-Appellant/Cross-Respondent,
v.
Vincent G. VIDAS, John S. Degnan, and Semcor, Inc., a New Jersey Corporation, Defendants-Respondents/Cross-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 2000.
Decided July 14, 2000.
*588 Ira G. Megdal, Cherry Hill, for plaintiff-appellant/cross-respondent (Cozen & O'Connor, attorneys; Mr. Megdal, on the brief).
Anne C. Singer, Camden, for defendants-respondents/cross-appellants (Wolf, Block, Schorr and Solis-Cohen, attorneys; Ms. Singer, on the brief).
Before Judges WALLACE, Jr., CUFF and LESEMANN.
*587 The opinion of the court was delivered by WALLACE, Jr., J.A.D.
This appeal is the sequel to Musto v. Vidas, 281 N.J.Super. 548, 658 A.2d 1305 (App.Div.1995), certif. denied, 143 N.J. 328, 670 A.2d 1069 (1996) (Musto I), wherein we held that plaintiff William Musto was an oppressed shareholder of Semcor, Inc., and that the remedy was a court-ordered buy-out of his shares pursuant to N.J.S.A. 14A:12-7(8) by the other one-third shareholders of Semcor, Inc., Vincent Vidas and John Degnan (defendants).
We remanded for the trial judge to determine the fair value of plaintiff's onethird interest. Following lengthy valuation proceedings, the trial judge valued Semcor, Inc. (Semcor) at $6,240,000 as of December 31, 1990, and plaintiff's share at $2,080,000. On December 26, 1996, the trial judge entered judgment requiring plaintiff to sell his shares in Semcor to defendants in return for $3,052,946. This amount included interest of $128,472 from January 1, 1991 through December 31, 1996, and a $155,526 credit to defendants *589 for payments made to plaintiff pursuant to a prior order. Subsequently, on June 18, 1997, plaintiff was awarded litigation fees and expenses in the amount of $482,088.03. Plaintiff appeals and defendants cross-appeal.
While the appeal was pending, we remanded the matter to the trial judge to consider plaintiff's motion to supplement the record regarding the sale of Semcor in June of 1998 to Advanced Communication Systems, Inc. (ACS) for approximately $40 million dollars. Following a hearing, the trial judge denied this motion. Plaintiff then filed a new notice of appeal and defendants again filed a cross-appeal.
On appeal, plaintiff contends the trial judge erred in: (1) establishing December 31, 1990 as the valuation date; (2) failing to give plaintiff an equitable adjustment for post-valuation date profits; (3) failing to apply the equitable interest rate advanced by plaintiff's expert; (4) determining he could not alter the valuation date from December 31, 1990; and (5) denying plaintiff's motion to supplement the record. In addition, plaintiff contends we should award him $96,025 for attorney's fees incurred in the appellate courts.
In the cross-appeal, defendants contend the judge erred in: (1) awarding plaintiff litigation expenses; (2) awarding prejudgment interest; (3) failing to grant two equitable adjustments to the fair value claimed by defendants; and (4) holding that the insurance provision in the shareholders' agreement survived the termination of plaintiff's shareholder status.
We reject plaintiff's and defendants' various challenges and affirm.

I
Plaintiff's primary arguments concern the selection of December 31, 1990 as the valuation date for determining fair value. Plaintiff suggests that December 31, 1996 would be a more appropriate and equitable valuation date because that date would take into account defendants' failure to distribute Semcor's profits to all the shareholders between 1991 and 1996, as well as Semcor's growth during these years. Alternatively, plaintiff urges that if December 31, 1990 remains the valuation date, then he is entitled to equitable adjustments to account for these factors.
Defendants maintain the trial judge was correct in not deviating from the presumptive valuation date set forth in the statute (the date of the filing of the complaint) because an award of post-1990 profits under any rationale would constitute an illegal double recovery since the determination of fair value is actually based upon a company's future income stream. Defendants further assert that plaintiff would not have sought a post-1990 valuation date if Semcor's value had decreased after 1990. Defendants also claim that plaintiff is judicially estopped from contending otherwise because he had asserted as late as 1994 that December 31, 1990 was the proper valuation date.
As an initial matter, we reject defendants' judicial estoppel claim. Generally, the doctrine of judicial estoppel bars a party to a legal proceeding from arguing a position inconsistent with one previously asserted. Bell Atlantic Network Servs., Inc. v. P.M. Video Corp., 322 N.J.Super. 74, 94, 730 A.2d 406 (App.Div.), certif. denied, 162 N.J. 130, 741 A.2d 98 (1999) (citation omitted). However, the doctrine is only applicable when the party against whom it is to be applied successfully asserted the inconsistent position in the prior proceeding. Id. at 95, 730 A.2d 406. Here, plaintiff advanced December 31, 1990 as the valuation date when he was to be the purchaser of the shares, a position which we reversed in Musto I. Since plaintiff was not successful in his argument, and the circumstances have now changed, we find no reason to apply the doctrine of judicial estoppel.
We turn now to plaintiff's arguments addressed to the valuation date. Pursuant *590 to N.J.S.A. 14A:12-7(8)(a), in a court-ordered buy-out:
The purchase price of any shares so sold shall be their fair value as of the date of the commencement of the action or such earlier or later date deemed equitable by the court, plus or minus any adjustments deemed equitable by the court if the action was brought in whole or in part under paragraph 14A:12-7(1)(c).
The "date of the commencement of the action" is considered the presumptive valuation date. See Stuart L. Pachman, Title 14A-Corporations, Comment to 14A:12 (1998-99)(noting that the date of the commencement of the action is the presumptive date for determining the fair value of shares which are bought out).
In Musto I, we instructed the trial judge with respect to the determination of the valuation date as follows:
On remand, the trial court must again determine the valuation date.... The trial court found no equitable reason to deviate from [N.J.S.A. 14A:12-7(8)(a)'s] provision that the commencement date of the action be the "presumptive date" for valuation purposes and determined that December 31, 1990 was the valuation date. However, in light of our conclusion that plaintiff should not be re-employed by the corporation, the court ordered payment of salary to plaintiff, the passage of time since the filing of the complaint, and other factors the trial court may deem relevant, we do not foreclose the trial court from considering whether a different valuation date would be "deemed equitable."
[Musto I, supra, 281 N.J.Super. at 561, 658 A.2d 1305.]
In determining to maintain December 31, 1990 as the valuation date, Judge Gottlieb stated:
There's an assumption ... that we're going to use December 31, [1990] here. Equitable reasons means to me that there's going to be some unfairness brought about by using December 31, [1990] that can't otherwise be addressed. [A]lthough you've given me a menu of reasons why I should deviate from December 31, [1990] and bring it closer to today, the only one that really has any intellectual appeal to me is [an equitable adjustment for post-1990 undistributed profits]. And, in that regard I find that equitably it's not sufficient to overcome the assumption that we're going to go with the filing date, because it can be addressed by another course, and that is just a matter of calculation of the adjustment for the undistributed profit plus interest.
However, Judge Gottlieb subsequently decided against an equitable adjustment for post-1990 corporate profits, stating:
I determine that post-1990 ... corporate profits are irrelevant for purposes of an equitable adjustment....
I say that because, one, another provision of the statute, which is subsection 8D says, "Interest may be allowed at the rate and from the date determined by the Court to be equitable...." That's the remedy for the post-valuation date use of the money.
However, the interest rate is to be set by me in the exercise of my reasoned judgment or discretion in an equitable fashion obviously, and in order to do that post-1990 financial circumstances... of the corporation are meaningful....
If, in fact, I were to allow an equitable adjustment as being participation in the post-valuation date ... profits of the entity, then intellectually it raises an inconsistency, [because] the valuation as of December 31, 1990 not only factors in what is the present value of this and that ... but also what is ... the likely future course of the corporation. As long as that is factored in obtaining a value for purposes of valuation, then you can't have it duplicated by saying not only are we giving you something ... which is based on, in part, the likely future course of the corporation, future *591 earnings ... we're also going to give you those future earnings. That can't occur. By the declaration in the statute, the provision of which I quoted for interest, that is the remedy that is to be provided.
Plaintiff claims that the trial judge erred by deviating from his original inclination to permit the equitable adjustments which should have been the law of the case.
The "law of the case" doctrine may be applied to the question of whether or not a decision made by a trial judge during one stage of the litigation is binding throughout the course of the action. State v. Hale, 127 N.J.Super. 407, 410-11, 317 A.2d 731 (App.Div.1974). The rule is "based upon the sound policy that when an issue is once litigated and decided during the course of a particular case, that decision should be the end of the matter." Id. at 410, 317 A.2d 731 (citation omitted). As applied to rules or orders of an interlocutory nature, such as a ruling by a trial judge during one stage of the action, application of the doctrine is discretionary. State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985).
Here, the trial judge's initial comments concerning equitable adjustments were not included as part of the corresponding April 19, 1996 order. In addition, the issue of post-valuation date profits had neither been briefed nor argued when the trial judge made his comments. Essentially, the trial judge made a tentative observation which he later changed. Under these circumstances, we find no reason to apply the law of the case doctrine.
In arguing that the trial judge abused his discretion by not taking the equities of the case into consideration in setting the valuation date, plaintiff relies on two recent New Jersey Supreme Court decisions, Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 734 A.2d 721 (1999) and Lawson Mardon Wheaton, Inc. v. Smith, 160 N.J. 383, 734 A.2d 738 (1999).
Balsamides involved the question of whether a judicially ordered buy-out pursuant to N.J.S.A. 14A:12-7(8) should include a marketability discount in determining the fair value of the purchaser's shares. Balsamides, supra, 160 N.J. at 354, 734 A.2d 721. The Court explained that a marketability discount accounts for a lack of liquidity in the shareholder's interest in a close corporation because there is no readily available market for the shares. Id. at 373, 734 A.2d 721. The Court held that a marketability discount should be applied in light of the equities of the case; specifically, the Court cited the fact that the seller was the oppressor and that the purchaser should not bear the brunt of the company's illiquidity merely because he or she is the designated buyer. Id. at 377-79, 734 A.2d 721.
In Lawson Mardon Wheaton, the issue was whether a marketability discount should be applied in determining fair value in a statutory appraisal action pursuant to N.J.S.A. 14A:11-1 to -11. The Court held that absent the presence of "extraordinary circumstances," such as where the dissenting shareholder has held out in order to exploit the transaction giving rise to the appraisal, the marketability discount should not be applied because to do so would enrich the majority shareholders and penalize the minority shareholders for taking advantage of the protection afforded by the appraisal statute and would inevitably encourage corporate "squeeze-outs." Lawson Mardon Wheaton, supra, 160 N.J. at 402-04, 734 A.2d 738.
Thus, the Lawson Mardon Wheaton and Balsamides cases demonstrate that the "equities of the case" must be considered when ascertaining fair value in oppressed shareholder actions. Specifically, the Court stated in Balsamides:
In cases where the oppressing shareholder instigates the problems, as in this case, fairness dictates that the oppressing shareholder should not benefit at the expense of the oppressed.... The statute *592 does not allow the oppressor to harm his partner and the company and be rewarded with the right to buy out that partner at a discount. We do not want to afford a shareholder any incentive to oppress other shareholders. What to do when it is the oppressing shareholder who is given the buy-out option is a harder question that we need not decide. The guiding principle we apply in this case and in Lawson Mardon Wheaton is that a marketability discount cannot be used unfairly by the controlling or oppressing shareholders to benefit themselves to the detriment of the minority or oppressed shareholders.
[Balsamides, supra, 160 N.J. at 382-83, 734 A.2d 721 (emphasis added).]
Unlike in Balsamides and Lawson Mardon Wheaton, the issue of a marketability discount, or any other discount, does not arise in this case; nor was the valuation date an issue in either of the Supreme Court cases. Beyond that, plaintiff's reliance on these cases is weakened by the fact that the "equities of the case" are taken into consideration when setting the valuation date under N.J.S.A. 14A:12-7(8)(a). This section requires that the valuation date be the date of the commencement of the action or such earlier or later date "deemed equitable" by the court, plus or minus any adjustments the court "deem[s] equitable." N.J.S.A. 14A:12-7(8)(a). We are satisfied that Judge Gottlieb considered the "equities of the case" in reaching his ultimate determination to maintain the presumptive valuation date of December 31, 1990.
Plaintiff also argues that if December 31, 1990 is found to be the appropriate valuation date, then the trial judge erred in failing to make equitable adjustments to fair value to reflect Semcor's growth in the years following the valuation date. In this context, plaintiff does not dispute the trial judge's determination of fair value or its utilization of the income capitalization method of valuation.
There are various factors which are considered fundamental in valuing a close corporation, including: (1) the nature of the business; (2) its history; (3) the economic outlook in general; and (4) the condition and outlook of the specific industry in particular. Lavene v. Lavene, 162 N.J.Super. 187, 193-94, 392 A.2d 621 (Ch. Div.1978) (quoting Rev. Rul. 59-60, 1959-1 C.B. 237). Generally, in valuation proceedings the corporation must be valued as a going concern, which necessitates not only examination of the corporation's historical earnings, but also consideration of the corporation's future prospects. Universal City Studios, Inc. v. Francis I. duPont & Co., 334 A.2d 216, 218 (Del.1975).
In utilizing the income capitalization method of valuation, the company's prospective income growth must be considered. See Lavene, supra, 162 N.J.Super. at 195, 392 A.2d 621 (noting that "potential future income is a major factor in valuing stocks of closely held corporations"). See also In re Marriage of Olson, 223 Ill.App.3d 636, 166 Ill.Dec. 60, 585 N.E. 2d 1082, 1089 (holding that both the future economic outlook and the capitalization of future earnings are important tools for valuing a close corporation), appeal denied, 145 Ill.2d 636, 173 Ill.Dec. 6, 596 N.E.2d 630 (1992); Waller v. American Int'l Distribution Corp., 167 Vt. 388, 706 A.2d 460, 463 (1997)(stating that the income capitalization method is identical to the discounted future earnings method of valuation). Thus, if the judge had allowed an equitable adjustment to account for a company's actual growth in the years following the valuation date, he might well have accorded plaintiff a double recovery. Consequently, we find no abuse of discretion in the trial judge's denial of plaintiff's request for equitable adjustments to fair value.
Moreover, we disagree with plaintiff's contention that the Supreme Court's reversal of Muellenberg v. Bikon Corp., 143 N.J. 168, 669 A.2d 1382 (1996), which we relied on in Musto I, should influence our *593 decision here. Although the Supreme Court in Muellenberg found a minority buy-out of the majority was the appropriate remedy, it also distinguished Musto I in that the minority shareholder in Muellenberg was actively involved in the operation of the company since its inception, and the company had been his only source of income for over ten years. Id. at 183, 669 A.2d 1382. That is not the situation here.
In sum, we find no abuse of discretion in the trial judge maintaining the valuation date of December 31, 1990, and in refusing to make equitable adjustments for Semcor's post-valuation date profits.

II
Plaintiff argues that the trial judge erred by not utilizing an equitable interest rate to allot him a twenty-five percent rate of return as the expected rate of return for the years subsequent to 1990, and by striking his expert's report to that effect.
Defendants argue that the term "equitable interest rate" is not "interest" as that term is used in the accepted sense; namely, a charge for the use of borrowed money. In addition, defendants claim that the term constituted a "net opinion" because the term is not recognized within the valuation field, there is no support for using company profits in setting an interest rate, and the equitable interest rate advanced was similar to the post-valuation profits previously barred by the trial judge.
In his report, plaintiff's expert, Raymond Grossman, asserted that plaintiff was entitled to an "equitable interest rate" under N.J.S.A. 14A:12-7(8)(d) to compensate him for the period after 1990 during which his Semcor investment remained in place. Grossman asserted:
Musto is entitled to interest from the valuation in the amount deemed equitable by the Court (an Equitable Interest Rate).... The Equitable Interest Rate [EIR] will be applied to the December 31, 1990 fair value of William Musto's Semcor stock in order to equitably adjust the value to ensure that it is fair as of the forthcoming buyout date. The EIR should compensate William Musto for (i) the time delay in receipt of his sale consideration, (ii) the investment risk he bore during this six-year period, and (iii) his opportunity cost of not earning comparable rates of return.
[A]n appropriate EIR for William Musto is one which recognizes that [he] remained an equity investor in Semcor common stock over the post-valuation period, and as an investor, he remained at risk to the same market conditions as any other investor in an equity security.
The EIR should be established at a fair rate which ensures that the oppressing shareholders do not benefit from their oppressive actions, at the expense of William Musto.
In determining the EIR, Grossman looked at the following sources: (1) rates of return on comparable securities over the post-valuation period; (2) the expected rate of return for an investor in Semcor as of December 31, 1990; and (3) Semcor's return on equity over the post-valuation period. Grossman determined the EIR range to be between 18% and 33%, and ultimately settled on an EIR of 25%.
In his deposition, Grossman could not identify any authoritative source which uses the term "interest" differently than as a charge for borrowed money. He indicated that the term "equitable interest rate" is different from the term "interest rate" because the former was particular to the facts of this case. Grossman was not aware of any source which defines the term "equitable interest rate." He agreed that the EIR is comparable to the annual dividend stream plaintiff was receiving prior to 1990.
In granting defendants' motion to strike that portion of Grossman's report and to bar Grossman from testifying regarding the EIR, Judge Gottlieb stated:
*594 I've noted as of January 1, 1991 Mr. Musto became a, in essence, creditor of the corporation, a lender to the corporation.... Under 8D, that is what I think the Legislature is talking about....
There are a multitude of other investments for which a return can be obtained, but as a matter of law, I hold that plaintiff has the characteristics of being a creditor/lender as opposed to an equity owner. Therefore, to that end Grossman's report is founded on a legal fallacy and cannot be advanced, I will... partly bar that.
Mr. Musto's investment is not to be considered an equity investment to establish an interest rate also because equity investment and interest rate are totally intellectually incompatible.
When there is a court-ordered sale of a corporation's stock, the court may award interest "at the rate and from the date determined by the court to be equitable...." N.J.S.A. 14A:12-7(8)(d). In the absence of any explicit indication of special meaning, words of a statute are to be given their ordinary and well-understood meaning. Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 182, 411 A.2d 704 (1980).
"Interest" is defined as "compensation fixed by agreement or allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use," and as "the amount owed to a lender in return for the use of borrowed money." Black's Law Dictionary 816 (7th ed.1999). The term has also been defined as "an exaction for past due obligations and, in essence, is in the nature of a penalty" and is compensation for delay in payment. Parsippany Hills Assocs. v. Rent Leveling Bd. of Parsippany-Troy Hills, 194 N.J.Super. 34, 52, 476 A.2d 271 (App.Div.), certif. denied, 97 N.J. 643, 483 A.2d 169 (1984).
Here, we are satisfied the term "equitable interest rate," as utilized by Grossman, is not encompassed by these definitions. We find no evidence that the term "interest" as used in N.J.S.A. 14A:12-7(8) was intended to have a special meaning as asserted by Grossman. Consequently, we find no abuse of discretion in the trial judge's rejection of plaintiff's proposed equitable interest rate.

III
Plaintiff argues that the trial judge erred by not granting his motion to supplement the record to take into account Semcor's mid-1998 sale to ACS for approximately $40 million. Specifically, plaintiff contends the sale is relevant as reflective of Semcor's increase in value as of December 1996, as well as the unfairness of adhering to a December 1990 valuation date.
Defendants maintain that the motion was properly denied because the sale of the corporation post-dated the valuation date by over seven years. Further, defendants claim that the sale was not newly discovered evidence as required by R. 4:50-1.
While this appeal was pending, we remanded this matter for the trial judge to consider plaintiff's motion to supplement the record as a motion pursuant to R. 4:50-1. In denying plaintiff's application, Judge Gottlieb viewed the sale of Semcor as a fortuitous event, regardless of the valuation date selected. In addition, the judge cited the policy of finality in litigation, commenting:
It's not as if the mid-1998 sale occurred on the heels of the 1990 valuation date or, indeed, the requested [1995] valuation date.[1] We had, depending on which date would be selected, either a seven and a half or two and [a] half year intervening period. So, we're talking about a time interval that occurs here.... If we open up the new valuation date, I am also encouraging the *595 imposition of a great inefficiency on the parties and on the court system itself.
All things being considered, there has to be a balancing of the tension, if you would, between the desire to be absolutely, perfectly, right, and the desire to have a decision, right or wrong, a decision, and let the parties go on with their lives from there. The tension is resolved by the passage of time. If this sale had occurred on February 1, 1991... I think it would have been meaningful. It did not.
Plaintiff points to the Supreme Court's decision in Lawson Mardon Wheaton, decided after Judge Gottlieb's denial of the motion, as support for his position.
Lawson Mardon Wheaton arose out of an appraisal action brought by shareholders dissenting from a corporate restructuring in 1991. Lawson Mardon Wheaton, supra, 160 N.J. at 389, 734 A.2d 738. The company offered to buy out the dissenting shareholders at $41.50 per share. Id. at 390, 734 A.2d 738. The case eventually reached the Supreme Court under the caption of Strasenburgh v. Straubmuller, 146 N.J. 527, 683 A.2d 818 (1996), shortly after the company announced an acquisition merger, wherein its stock was purchased for $63.00 per share. Lawson Mardon Wheaton, supra, 160 N.J. at 391, 734 A.2d 738. In Strasenburgh, the Court remanded to the trial court to consider whether to reopen the record to consider the company's recent merger "in making a just and equitable determination of the appraisal value as of 1991." Strasenburgh, supra, 146 N.J. at 545, 683 A.2d 818. On remand, the trial court declined to reopen the record. We upheld that ruling on appeal. Lawson Mardon Wheaton, Inc. v. Smith, 315 N.J.Super. 32, 716 A.2d 550 (App.Div. 1998).
The Supreme Court reversed in Lawson Mardon Wheaton, Inc. v. Smith, 160 N.J. 383, 404-07, 734 A.2d 738 (1999), holding that the trial court erred by refusing to reopen the record to consider the per share acquisition price of the company in 1996 to "gauge, assess, and determine" the fair value of the dissenters' stock on the December 1991 valuation date. The acquisition price was relevant since the company asserted that the fair value of the dissenters' stock was $41.50 per share in December 1991, while the 1996 acquisition price was $63.00 per share, even though the company's fortunes had steadily deteriorated between 1991 and 1996. Id. at 406, 734 A.2d 738. Thus, as the Court noted: "[t]he Company's own financial statements disclose that the fair value of the Company was greater in 1991 than in 1996." Id. at 405, 734 A.2d 738. Therefore, because the company's fortunes had waned during the 1991 to 1996 period, and in light of the 1996 per share sales price, the Court questioned the company's assertion that the fair value of the dissenters' stock in 1991 was worth only $41.50 per share. Id. at 407, 734 A.2d 738.
Although Lawson Mardon Wheaton lends some support to plaintiff's contention, under the facts of this case, we find no abuse of discretion in Judge Gottlieb's decision not to consider the seven-year-old acquisition price. Unlike the situation in Lawson Mardon Wheaton, evidence of the 1998 acquisition price was not clearly shown to have aided in the assessment of the fair value of plaintiff's stock in December of 1990. Whatever the fortunes of Semcor after 1990, whether good or bad, they were due to the efforts of defendants. Consequently, we find no abuse of discretion in the trial judge's refusal to open the judgment to permit plaintiff to supplement the record to consider the 1998 acquisition price of Semcor.
In sum, we find no error in the trial judge's refusal to open the judgment to permit plaintiff to supplement the record to consider Semcor's 1998 sale.

IV
In plaintiff's reply brief, he challenges for the first time the trial judge's calculation of Semcor's fair value. Specifically, *596 plaintiff questions the income capitalization approach utilized to the extent that the approach understated Semcor's expected future growth rate.
It is well-settled that introduction of a new issue by way of a reply brief is improper. Selective Ins. Co. of Am. v. Hojnoski, 317 N.J.Super. 331, 335, 722 A.2d 118 (App.Div.1998); Interchange State Bank v. Veglia, 286 N.J.Super. 164, 188, 668 A.2d 465 (App.Div.1995), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996); City of Elizabeth v. Elizabeth Fire Officers Ass'n, 198 N.J.Super. 382, 384 n. 2, 487 A.2d 337 (App.Div.1985). Moreover, the issue raised in this matter is not one of public importance. See Coastal Group v. Planned Real Estate Dev. Section, 267 N.J.Super. 49, 56, 630 A.2d 814 (App.Div.1993)(addressing the issue of a state agency's authority to order rescission, even though improperly raised for the first time in a reply brief, because the Appellate Division considered it to be a matter of public importance); Hojnoski, supra, 317 N.J.Super. at 335, 722 A.2d 118 (addressing an apparent conflict between a statute and a regulation even though the issue was raised for the first time in an appellate reply brief). Consequently, we will not consider this issue raised for the first time in plaintiff's reply brief. See Veglia, supra, 286 N.J.Super. at 188, 668 A.2d 465 (refusing to entertain the issue of the method by which prejudgment interest was calculated since it was improperly raised for the first time in a reply brief).

V
In his final argument, plaintiff seeks to require defendants to reimburse him for his prior appellate costs in the appellate proceedings.
Defendants maintain that plaintiff is not entitled to such fees and costs because he failed to apply for the expenses within ten days after determination of the appeal, as required by R. 2:11-4, and because a large portion of the expenses were incurred before the Supreme Court. We agree.
By order dated June 4, 1997, Judge Gottlieb awarded plaintiff $482,088.03 for attorney's fees and other litigation costs related to trial court matters. However, the judge denied plaintiff any attorney's fees relating to his appeal because the judge did not "interpret R. 2:11-4 as authorizing this trial court to act on appellate fees, especially where the Appellate Division did not refer that question to me."
R. 2:11-4 provides in pertinent part: "An application for a fee for legal services rendered on appeal shall be made by motion supported by affidavits as prescribed by R. 4:42-9(b) and (c), which shall be served and filed within 10 days after the determination of the appeal." In Tooker v. Hartford Accident and Indem. Co., 136 N.J.Super. 572, 578, 347 A.2d 371 (App. Div.1975), certif. denied, 70 N.J. 137, 358 A.2d 184 (1976), we held that the trial court lacked the power to award attorney's fees and costs for legal services rendered in the Appellate Division in a prior appeal of the matter because application for such allowances should have been made in the Appellate Division. However, because the proofs were before the court and the opposing party did not challenge the reasonableness of the fee, this court relaxed the ten-day requirement of R. 2:11-4 in the interests of justice and awarded the moving party counsel fees and costs relating to the prior appeal. Ibid.
Unlike in Tooker, we find no compelling interests of justice warranting a relaxation of the ten-day requirement under R. 2:11-4. Moreover, we reject plaintiff's claim in his reply brief that R. 2:11-4 does not apply to interlocutory appeals.

VI
In their cross-appeal, defendants assert that the trial judge erred in awarding counsel fees to plaintiff because the judge relied on the finding that plaintiff was an oppressed shareholder, rather than finding that defendants acted in bad faith, as required by N.J.S.A. 14A:12-7(10). Defendants *597 further claim that they are entitled to counsel fees pursuant to N.J.S.A. 14A:12-7(10) because the trial judge found in Musto I that plaintiff did not act in good faith on several occasions.
Plaintiff responds by pointing out that the trial judge did not rely on N.J.S.A. 14A: 12-7(10), but awarded him counsel fees pursuant to N.J.S.A. 14A:12-7(8)(d), which allows a court to award counsel fees to a selling oppressed shareholder. Plaintiff further contends that defendants are not entitled to counsel fees under N.J.S.A. 14A:12-7(10) because the trial judge did not find that he acted in bad faith.
Contrary to defendants' contention, the trial judge was not required to find that defendants acted in bad faith in order to award plaintiff counsel fees pursuant to N.J.S.A. 14A:12-7(8)(d). This section does not require the judge to find bad faith, but rather, that the judge find that shareholder oppression took place:
If the court finds that the action was maintainable under paragraph 14A: 12-7(1)(c)[any oppressive action by officers or directors], the court in its discretion may award to the selling shareholder or shareholders reasonable fees and expenses of counsel and of any experts, including accountants, employed by them.

[N.J.S.A. 14A:12-7(8)(d).]
Consequently, we find no abuse of discretion in awarding plaintiff counsel fees pursuant to N.J.S.A. 14A:12-7(8)(d).
Defendants further claim that they are entitled to counsel fees under N.J.S.A. 14A:12-7(10) because of plaintiff's bad faith. This section authorizes the award of reasonable expenses to the injured party where the court finds a party acted "arbitrarily, vexatiously, or otherwise not in good faith...." N.J.S.A. 14A:12-7(10). In rejecting defendants' request for counsel fees, Judge Gottlieb stated:
I will not subscribe to any affirmative remedy in favor of defendants pursuant to N.J.S.A. 14A:12-7(10) since to do so would be an endorsement of a windfall to some extent and would mean that I have found[,] as I have not[,] that Mr. Musto acted in bad faith in bringing the suit (as opposed to advancing particular positions during the case's progress).
We agree and affirm the denial of counsel fees for defendants essentially for the reasons expressed by Judge Gottlieb.

VII
Defendants also contend the trial judge's award of $1,128,472 in prejudgment interest to plaintiff was grossly excessive and constituted an abuse of discretion. In addition, they claim there are compelling reasons for not awarding prejudgment interest at all, or at least not after March 13, 1992 when defendants formerly moved to purchase plaintiff's stock, because of their offer to pay more for plaintiff's stock than what was ultimately found to be fair value by the trial judge. Further, defendants claim that plaintiff was responsible for needless litigation. Finally, defendants contend that if interest is to be awarded, the trial judge erred in awarding the prime rate, rather than a treasury bill rate or the prejudgment interest rate established by R. 4:42-11, and in awarding compound, rather than simple, interest.
Plaintiff maintains that the award of prejudgment interest was proper because defendants had use of his money from the valuation date until his shareholder status was terminated. Further, plaintiff asserts that the trial judge was correct in utilizing the prime rate as the applicable rate of interest and in awarding compound interest.
In awarding prejudgment interest in the amount of $1,128,472 running from January 1, 1991 through December 31, 1996, Judge Gottlieb stated:
Now interest. Defendants urge that it be not available but realistically asa cutoff as of March 1992. That is when the several motions were made which *598 memorialized a buy-out offer of the other. I'm not going to go on with that because then that overlooks the ultimate fact and that is that defendant had the use of plaintiff's money....
What I have selected for the use of an interest rate payable here is the prime rate and why I have selected the prime rate is, it is most analogous to a corporate borrower and in light of Semcor's solid financial position....
I am not going to use the risk free rates, and by that I refer to the treasury notes, treasury bills, CDs, that sort of thing, since that would be intellectually inconsistent with my earlier determination of fair value where I said the cap rate which I have to apply ... to the income stream or reasonable income in order to arrive at the formulation of value, put a certain amount in there additional for Semcor not being, "risk free."
I have thought about ... whether it should be compound or simple.... What I've done is try, since I'm using the prima [sic] rate ... to figure out if it were going to ABC Bank what it would be doing in borrowing X dollars for two years, four years, whatever it is, some period longer than one year.
In that marketplace, to my knowledge, it would be compounded on an annual basis at best, maybe compounded at a shorter period of time. That's why I have chosen compounding as opposed to simple. I have chosen annual as opposed to quarterly compounding only because it seems to me that in the light of the events that occurred if it had been the equivalent circumstance the lending of money to Semcor would have been on probably not a quarterly compounding basis but on an annual.
N.J.S.A. 14A:12-7(8)(d) provides in pertinent part:
Interest may be allowed at the rate and from the date determined by the court to be equitable, and if the court finds that the refusal of the shareholder to accept any offer of payment was arbitrary, vexatious, or otherwise not in good faith, no interest shall be allowed.
Generally, the awarding of prejudgment interest is subject to the trial judge's broad discretion in accordance with principles of equity. A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co., 200 N.J.Super. 515, 525, 491 A.2d 1280 (App. Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985); Tobin v. Jersey Shore Bank, 189 N.J.Super. 411, 414, 460 A.2d 195 (App.Div.1983). We will defer to the trial judge's exercise of discretion involving prejudgment interest unless it represents a manifest denial of justice. A.J. Tenwood, supra, 200 N.J.Super. at 525, 491 A.2d 1280 (citations omitted). The primary consideration in awarding prejudgment interest is that "the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 506, 323 A.2d 495 (1974).
Defendants claim that either no interest should be awarded or the amount awarded should be reduced because plaintiff was responsible for the length of the litigation. We disagree. The fact that defendants may have made a buy-out offer prior to the litigation greater than the trial judge's ultimate determination of fair value does not mean that plaintiff's refusal to accept such an offer constitutes unjustified delay. As noted, the initial decision required plaintiff to buy-out defendants' interests. Thereafter, much of the delay was due to the defendants' interlocutory appeal from that initial decision. Moreover, some of the examples of delay cited by defendants were accounted for in the trial judge's reduction of plaintiff's counsel fee award. Therefore, we find no abuse of discretion in the trial judge's decision to award prejudgment interest.
*599 Further, we reject defendants' contention that a lower rate, rather than the prime rate, is an appropriate rate. See Tobin, supra, 189 N.J.Super. at 416, 460 A.2d 195 (noting that in the context of a wrongful retention or detention of funds by a bank, the appropriate rate of prejudgment interest in such cases is usually the prime lending rate). Similarly, we find no abuse of discretion in the trial judge's decision to award compound rather than simple interest. Borough of Wildwood Crest v. Smith, 235 N.J.Super. 404, 407, 563 A.2d 48 (App.Div.1988)(summarily finding no error in the trial court's award of compound rather than simple interest in a condemnation action).

VIII
Defendants further contend the trial judge erred in not granting two equitable adjustments to fair value; namely, an adjustment for the post-1990 compensation paid to plaintiff by Semcor according to court order, and the amount voluntarily paid by Semcor to plaintiff in 1991 as deferred compensation. Defendants claim that the judge's failure to allow for these adjustments resulted in plaintiff receiving more than fair value.
Plaintiff maintains that the compensation he received in both instances does not constitute a double recovery, but rather is separate and distinct from the amount he received for his shares.
In 1991, Semcor paid $550,000 to plaintiff$200,000 in July and $350,000 in December. Vidas described the payments as deferred compensation for tax purposes and claimed that this was purely a voluntary decision, not done under any legal obligation. Thomas Earp, Semcor's attorney, also testified that the payments were made as deferred compensation for tax purposes.
In his initial decision, Judge Gottlieb found that the alteration of the equal compensation agreement constituted an act of shareholder oppression on the part of defendants and ordered that the compensation be "evened out" for the relevant time period. In Musto I, we upheld the trial judge's findings in this regard as supported by substantial credible evidence, and ultimately awarded Musto $693,000. Musto I, supra, 281 N.J.Super. at 561-62, 658 A.2d 1305.
In disallowing the adjustments sought by defendants, Judge Gottlieb stated:
[I]t was characterized by the defendants as deferred compensation. It has been argued to me that ... that characterization [] was just a fiction in order to be able to take out of the corporation monies that year and still meet the equal compensation requirements.
[I]t was called deferred compensation... to avoid taxes which would otherwise have had to have been paid to the State of New Jersey as a then subchapter S corporation....
So, the first concern that I have is the defendants have selected to go that route ... in order to gain a tax advantage and now having obtained that tax advantage wish to disavow it. I will not permit that. I find that they are estopped from characterizing it as anything other than deferred compensation for efforts before January 1,1991.
The second basis is ... that it was paid pursuant to the equal compensation agreement and not for reasons of distributing to plaintiff a share of the corporation.
As noted above, N.J.S.A. 14A:12-7(8)(a) authorizes a trial judge to make adjustments to fair value, either plus or minus, which the trial judge finds equitable. The fact that Semcor was not obligated to make a payment to plaintiff, but did so voluntarily, does not mean the trial judge was obligated to make an equitable adjustment to fair value to account for the payment, or that his failure to do so constitutes an abuse of discretion.
Moreover, with respect to the court-ordered payment of deferred compensation, that payment and the payment for the fair *600 value of shares are separate and distinct remedies. As we noted in Musto I, with respect to the court-ordered payment of compensation:
Such an award is akin to an award of damages to a minority shareholder as compensation for an injury suffered as a result of the oppressive conduct by the majority.... In view of defendants' improper conduct towards plaintiff, it is a reasonable exercise of that power for the trial court to award damages to plaintiff equal to Vidas's pay for 1991 and 1992.
[Musto I, supra, 281 N.J.Super. at 562, 658 A.2d 1305.]
Consequently, if defendants were awarded an equitable adjustment for the courtordered payment, the effect would be to nullify the damages awarded plaintiff for defendants' oppressive conduct. We will not grant such relief.

IX
Defendants further contend the trial judge erred in holding that paragraph sixteen of the shareholders' agreement, dealing with a shareholder death benefit in the form of deferred compensation, survived plaintiff's termination as a shareholder of Semcor.
Paragraph sixteen of the May 1990 shareholders' agreement provides:

Deferred Compensation. The parties acknowledge [sic] that each Shareholder serves and has served as an employee, officer, and director of SEMCOR. In consideration of each Shareholder's agreement to continue to perform services as an executive of SEMCOR, SEMCOR has agreed to pay deferred compensation to the Shareholder's family upon his death. Such deferred compensation shall be paid as follows:
A. The total amount payable as deferred compensation, with respect to each Shareholder, shall be the sum of THREE HUNDRED SIXTY THOUSAND DOLLARS ($360,000).
In a statement of reasons attached to his April 19, 1996 order, Judge Gottlieb stated with respect to the above provision:
Defendants ... claim ... that since plaintiff will no longer be a shareholder, his family (upon his death) should not be entitled to the benefit.
But that position overlooks the agreement's declaration that plaintiff had served the corporation and agreed to continue to serve the corporation. To deny plaintiff's position would be to (a) overlook the fact that defendants precluded plaintiff from continuing to serve the corporation; and (b) the court cannot separate the value attributable to past services from that ascribed to potential future service.
N.J.S.A. 14A:12-7(8)(f) provides in pertinent part:
Upon entry of an order for the sale of shares under this subsection ... the selling shareholders shall no longer have any rights or status as shareholders, officers, or directors, except the right to receive the fair value of their shares plus whatever other amounts as may be awarded.

[ (emphasis added).]
Thus, the statute expressly permits "other amounts as may be awarded," and does not require that all contractual agreements between shareholders end with the termination of shareholder status. In short, we find nothing in the statute which prohibits the award in question. That is, the trial court, as a court of equity, "has the power of devising the remedy and shaping it in order to fit the circumstances of the case and the complexities involved therein." Musto I, supra, 281 N.J.Super. at 562, 658 A.2d 1305.
Consequently, we affirm the trial judge's holding that the death benefit provision of the shareholders' agreement remained in effect after the termination of plaintiff's status as shareholder.
Affirmed.
NOTES
[1] Plaintiff had also advanced a 1995 valuation date in addition to the 1996 valuation date.