**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0250-22

MARLON VALDEZ-MARTINEZ,
and IRMA CHINCHILLA, his wife,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

PARKSITE, INC., SEAGIS
PROPERTY GROUP, LP, and
SEAGIS NORTH BRUNSWICK,
LLC,

      Defendants-Respondents,

and

NAI DELEO-BRAM & CO.
PROPERTY MANAGEMENT
SERVICES,[1]

      Defendant-Respondent/
      Cross-Appellant,

and

SEAGIS PROPERTY GROUP, LP,

---

[1]  Improperly pled as DeLeo-Bram & Co. Property Management Services.

and SEAGIS NORTH BRUNSWICK,
LLC,

> Defendants/Third-Party Plaintiffs-
> Respondents/Cross-Appellants,

v.

MILES SQUARE ROOFING
COMPANY, INC.,

> Third-Party Defendant.

_____

> Submitted November 13, 2024 – Decided February 27, 2025
>
> Before Judges Sumners and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5894-17.
>
> Ginarte Gallardo Gonzalez & Winograd, LLP, attorneys for appellants/cross-respondents (John Ratkowitz, on the briefs).
>
> Riker Danzig LLP, attorneys for respondents/cross-appellants (Edwin F. Chociey, Jr., of counsel and on the briefs; Siobhan A. Neary, on the briefs).

PER CURIAM

This appeal and cross-appeal challenge the trial judge's pretrial evidentiary orders, dismissal of a negligent hiring of an incompetent contractor claim and directed verdict dismissing plaintiffs Marlon Valdez-Martinez and

2

Irma Chinchilla's[2] third amended complaint against defendants Seagis Property Group, LP and Seagis North Brunswick, LLC (collectively Seagis) and NAI DiLeo-Bram Property Management Services. The lawsuit arises from the serious and permanent injuries Valdez-Martinez sustained when he accidently fell through an unguarded warehouse skylight while performing roof repairs in the course of his employment.

For the reasons that follow, we affirm the judge's orders. Because we affirm the directed verdict, which is dispositive of all claims against defendants, it is not necessary to address their cross-appeal.

I.

A. The Parties[3] and Their Relationships

Valdez-Martinez was formerly employed by third-party defendant Miles Square Roofing Company, Inc.[4] At the time of his accident, he had been employed to repair roofs for approximately six years, the last five with Miles.

---

[2] Because Irma Chinchilla's individual claims are per quod, we refer to plaintiffs collectively as "Valdez-Martinez."

[3] We do not discuss defendant Parksite, Inc., the warehouse tenant, that was granted summary judgment dismissal (unopposed). Parkside is not a party to the appeal or cross-appeal, and its conduct is not relevant to the issues before us.

[4] Seagis and NAI's claims against Miles were dismissed by stipulation.

 A-0250-22

He began as a "helper" with Miles before rising to "foreman." As the foreman of the job on the day of the accident he was "in charge of the work" in the field. About two years before the accident, Valdez-Martinez attended a ten-hour Occupational Safety and Health Administration (OSHA) safety course provided by Miles, which included a training on the use of safety harnesses. Miles' manager Oscar Orozco also provided safety meetings for employees every other week.

Seagis owned the warehouse where the accident occurred. The warehouse was part of its property portfolio of over one hundred commercial warehouses on the east coast. Seagis' employees did not supervise independent contractors, such as Miles, regarding compliance with OSHA when performing work at its properties. Seagis did not have an office nor an employee or representative working at the warehouse.

NAI, a property management company, was hired by Seagis to manage the warehouse in accordance with a management agreement. NAI also managed fourteen of Seagis' other properties. Like Seagis, NAI did not have an office nor an employee or representative working at the warehouse. NAI's responsibility was to identify problems at the warehouse, find and work with the warehouse tenants to determine the right solution, and review and communicate

4

the warehouse tenants' proposals to Seagis. On Seagis' behalf, NAI contracted with Miles to repair the warehouse roof. During its inspection, NAI relied on Miles' expertise to identify what repairs were needed because OSHA regulations were beyond its expertise as a property manager. NAI was not requested by Seagis or anyone else to monitor or supervise Miles or other contractors' performance or safety compliance at the warehouse. NAI relied on the contractors' expertise to safely perform their work. Seagis did not expect anyone from NAI to be at the warehouse on the day of the accident, or to monitor the work performed by Miles.

Third-party defendant Miles began performing various roofing repair jobs at Seagis properties in 2007. No other Miles' employee had an accident like Valdez-Martinez in those prior jobs. On the day of the accident, Orozco supervised the manner Valdez-Martinez and his co-worker Alejandro Martinez were to safely perform the repair. Orozco did not expect Seagis or NAI to be involved in the supervision of—or safety protocols for—the roof repair.

B. Pre-Accident Inspection Of The Warehouse Roof

In April 2014, Orozco's inspection revealed the warehouse roof's dangerous condition could cause a roofer to accidentally step on one of the unguarded skylights because they blend-in with the roof's surface. The skylight

A-0250-22

that Valdez-Martinez fell through was one of thirty translucent, acrylic panels dotted across the nearly flat surface of the 30,300 square foot section of the roof, referred to as Roof B.[5] The skylights were in the same corrugated shape as the roof and flush with its metal surface. The same "very faded," "corroded," and chipped white paint covered the roof's surface and skylights, thereby causing the skylights to "blend[] in" with the roof. Some of the skylights had black, seven-inch wide strips running along one or more of their seams from previous repairs, having the effect of distinguishing those portions from the roof's surface. The skylights were unguarded because they were not sealed with an OSHA-compliant cover nor surrounded by guardrails to protect against someone falling through.

In a June 2017 inspection, Orozco noted "the coating of the entire [R]oof [B] is showing serious signs of deterioration" and "the overall integrity of the roofing system [of Roof B] is poor." The report recommended that "approximately twenty[-]one (21) open existing patches in the metal [R]oof [B] joints" be patched, and that Roof B be fully replaced "at earliest convenience."

Miles was hired to "perform roof inspection repairs including joint sealing in the gutter area, pipe installation, roof joint patching, tree trimming, and [M-

---

[5] The warehouse roof was comprised of a total of three sections: A, B, and C.

Class synthetic rubber] patching as necessary."  A number of the repairs were at or near a skylight where Valdez-Martinez had been working when the accident occurred.  Orozco did not inform Seagis nor NAI about the hazardous condition due to the unguarded skylights.

C. The Accident

On the morning of August 1, 2017, Orozco assigned Valdez-Martinez and Martinez to repair Roof B's unguarded skylights.  Martinez climbed the ladder to the roof first, carrying his and Valdez-Martinez' safety harnesses.  Once on the roof, Martinez put on his safety harness and attached the anchor.  Valdez-Martinez followed, but when he got on the roof, he did not put on his safety harness.  OSHA requires workers to wear fall protection equipment when working near unguarded or open skylights.  See 29 C.F.R. § 1926.501(b)(4)(i); see also American National Standards Institute (ANSI) standard A1264.1.

Martinez testified he first realized the roof was "dangerous" upon reaching the roof's surface and seeing the skylights for the first time, which appeared "clear" with "no basis."  Martinez said that when Valdez-Martinez reached the roof's surface, he also recognized the danger posed by the skylights, and they advised each other to be careful.  Valdez-Martinez testified Orozco did not warn him that the skylights blended-in with the roof when they spoke the morning of

the accident, but he does not remember anything about what happened after he got on the roof.

Martinez became aware of the accident when he heard a "hard noise, a loud noise" from "down below" that he initially mistook for a forklift. He "look[ed] and yell[ed]" for Valdez-Martinez, while walking "very carefully" on the roof. Coming upon a "broken skylight," he peaked over and saw Valdez-Martinez laying on the warehouse floor.

## II.

### Directed Verdict For Defendants

Before us, Valdez-Martinez first argues that Trial Judge Alberto Rivas erred in granting defendants' Rule 4:40-1 motions for a directed verdict at the close of his case in a bifurcated liability trial. The judge explained his reasoning in a thoughtful written decision. Accepting all of Valdez-Martinez' evidence as true and considering the inferences drawn therefrom, the judge found that neither NAI nor Seagis had a contractual or legal duty to ensure that Valdez-Martinez performed the warehouse roof repair in a safe manner. The judge determined "[i]t is clear that the relationship between the parties placed the onus of worker safety squarely on Miles" based on its contractual duty and that "it

would not appear fair to impose a duty of care under the factual scenario . . . in this case" upon defendants.

Valdez-Martinez contends the judge erred in ordering dismissal of his complaint against defendants. As to Seagis, he argues it owed him, as an invitee, a nondelegable duty to warn of the hazardous nature of the skylights because they were a latent condition on the property that Seagis should have known existed. As to NAI, he argues, as the warehouse manager, it owed him a common law duty to warn and protect against the hazardous condition of the skylights.

A trial judge applies the same standard as a motion for involuntary dismissal under Rule 4:37-2(b) when deciding a defendant's Rule 4:40-1 directed verdict motion at the close of a plaintiff's case. Rule 4:37-2(b) permits the judge to grant a motion for involuntary dismissal of any action, or part thereof, at the end of a plaintiff's case on "the ground that upon the facts and upon the law the plaintiff has shown no right to relief." "Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid. A dismissal is appropriate when "no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present."

A-0250-22

Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2(b) (2025). Said differently, a directed verdict is proper "if the evidence and uncontradicted testimony is 'so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the [judge] to decide and not the jury.'" Frugis v. Bracigliano, 177 N.J. 250, 270 (2003) (quoting Ferdinand v. Agric. Ins. Co., 22 N.J. 482, 494 (1956)).

Applying these principles, we affirm Judge Rivas' order substantially for the cogent reasons expressed in his written decision. To prove his negligence claims against defendants, Valdez-Martinez must prove: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citation and internal quotations omitted). The proofs showed that defendants did not owe Valdez-Martinez a duty of care when he was working for Miles to repair the warehouse roof.

Judge Rivas accepted his responsibility to determine the existence and scope of whether defendants owed a duty of care to Valdez-Martinez when he was repairing the roof. See Desir, Estate of ex rel. Estiverne v. Vertus, 214 N.J. 303, 322 (2013). As the judge ruled, the uncontroverted evidence was that the roof repair agreements between Miles and Seagis established it was Miles' sole

responsibility to supervise the warehouse roof repair without Seagis or NAI's involvement. The clear intention of the agreements, as the judge reasoned, was to place "the onus of worker safety squarely on Miles." Also, the property management agreements between NAI and Seagis did not assign responsibility to either party to supervise or control the way independent contractors, such as Miles, performed their jobs at the warehouse. The judge found that under the Hopkins[6] factors—foreseeability, "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution"—defendants did not owe Valdez-Martinez a duty.

It is clear that only Miles had the expertise and knowledge of OSHA regulations to direct Valdez-Martinez how to safely repair the warehouse roof. The record is also clear that Orozco never informed defendants about the skylights' hazardous condition, and none of defendants' representatives had been on the roof, supplied any equipment for the project, nor instructed Valdez-Martinez.

Moreover, as the warehouse owner, Seagis is not responsible for the harm that occurs to an employee of an independent contractor because of the very

---

[6] Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 438-39 (1993).

A-0250-22

work the employee was hired to perform.  See Dawson v. Bunker Hill Plaza Assoc., 289 N.J. Super. 309, 318 (App. Div. 1996) (quoting Sanna v. Nat'l Sponge Co., 209 N.J. Super. 60, 67 (App. Div. 1986)) ("[T]he landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work.").  Miles was well aware of the roof's hazardous condition, and thus was in the best position "to recognize the degree of danger involved and to adjust their methods of work accordingly."  Sanna, 209 N.J. Super. at 67.  Based on the evidence Valdez-Martinez presented and the controlling law, the directed verdict for defendants should not be upset.

III.

Pretrial Rulings

Valdez-Martinez next challenges several pretrial evidentiary rulings.  We address them in the order presented.

A. Defendants' In Limine Motion Regarding Valdez-Martinez' Expert

Valdez-Martinez contends the judge erred in hearing defendants' motion in limine to bar aspects of his liability expert William Mizel's report and testimony as a net opinion because it was dispositive as to claims against NAI

and, consequently, should not have been decided at the trial pursuant to Rule 4:25-8.[7]

We defer to a trial judge's evidentiary ruling absent an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021). Yet, given that Valdez-Martinez raised this issue for the first time on appeal, we reverse only if the judge's error was "clearly capable of producing an unjust result." R. 2:10-2. We conclude there was no abuse of discretion and no unjust result.

The motion, one of eight in limine motions presented to the judge, sought to preclude Mizel from opining that: (i) NAI was a "prime" or "general" contractor subject to OSHA; (ii) defendants were obligated to investigate Miles' possible OSHA violations; (iii) Miles was a safety-incompetent contractor; and (iv) defendants violated applicable safety standards based on ANSI and NIOSH guidelines. Hearing the motion during Valdez-Martinez' case-in-chief, the judge did not grant all the relief defendants' sought.

Mizel was qualified as an expert in construction site management and general industry standards related to OSHA. This allowed him to testify

---

[7] Rule 4:25-8, defines an in limine motion "as an application returnable at trial for a ruling regarding the conduct of the trial, including admissibility of evidence, which motion, if granted, would not have a dispositive impact on a litigant's case."

concerning prime/general contractor status, OSHA, ANSI, and NIOSH, and opine as to NAI's duty of care, if any, towards Valdez-Martinez. While OSHA, ANSI, and NIOSH can establish the nature and extent of the duty of care, they are not the only sources for doing so. See Fernandes v. DAR Dev. Corp., Inc., 222 N.J. 390, 404-06 (2015). Similarly, a violation of industry standards is "no more than evidence of negligence. . . . [And] noncompliance with an industry standard does not conclusively establish negligence." Id. at 406.

Thus, even though Mizel was barred from opining regarding prime/general contractor status and ANSI and NIOSH compliance to support Valdez-Martinez' incompetent contractor claim, Mizel was still able to testify regarding Valdez-Martinez' common law negligence claims that defendants failed to ensure his safety or that NAI failed to supervise the repair and address OSHA safety concerns. The judge therefore neither abused his discretion nor committed plain error in deciding defendants' motion in limine once the trial was already underway and Mizel's testimony was limited.

B. Barring Testimony About Miles' OSHA Violations and the Rivera Lawsuit

Valdez-Martinez contends the judge erred in granting defendants' in limine motion to bar expert testimony about Miles' OSHA violations and Rivera v. PNL Jersey Props., LLC, No. A-2266-17 (App. Div. Mar. 25, 2019). He

argues the evidence is admissible expert opinion under N.J.R.E. 703 because it proves defendants had constructive notice that Miles was "safety-incompetent" by not having its workers follow safety guidelines. Valdez-Martinez also contends the judge erred because he misconceived the dates and details of the OSHA citations, and the evidence was not unduly prejudicial to Miles.

The judge found the OSHA citations referenced in Mizel's report either post-dated Valdez-Martinez' accident, or in the case of the 2011 OSHA citations, were without sufficient detail concerning what occurred. The judge barred Mizel from testifying about the OSHA citation that post-dated the accident because a party cannot be charged with negligently hiring Miles based on an incident that has not yet occurred. The judge barred testimony about the 2011 citations under N.J.R.E. 404(b)'s prohibition of propensity evidence. The judge barred Mizel from testifying about the Rivera lawsuit because he found that any tangential relevance was outweighed by the risk of confusing the issues, misleading the jury, and undue prejudice under N.J.R.E. 403. We conclude the judge's rulings were not an abuse of discretion.

N.J.R.E. 703 provides experts may rely upon the facts that need not be admissible in forming the basis of their opinions so long as they are "of a type reasonably relied upon by experts" in that field in forming opinions on the

subject. Mizel cannot testify about inadmissible facts under the guise of Rule 703 by bootstrapping them to his expert opinion. Miles' OSHA violations that post-dated Valdez-Martinez' accident are not admissible to show that defendants were negligent in hiring Miles because their prejudice substantially outweighs their probative value of what occurred during Valdez-Martinez' accident. See N.J.R.E. 403(a). Moreover, given Mizel was later precluded from opining that Miles was incompetent concerning safety requirements, it would have been harmless to preclude evidence of the OSHA citations.

Regarding the 2011 OSHA citations, the judge correctly reasoned it was inadmissible because there was no detail "as to the facts and nature of the alleged violation" to assess its admissibility under N.J.R.E. 404(b). The rule allows evidence of a "wrongs, or acts" to be admitted "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." N.J.R.E. 404(b)(2). The judge did not abuse his discretion in barring the violation evidence considering the lack of detail about the citation. In addition, because Mizel was later precluded from opining that Miles did not adhere to safety requirements, it would have been harmless to preclude evidence of the OSHA violations.

As to the <u>Rivera</u> action, to allow Mizel to testify about the case would also result in presenting inadmissible evidence to the jury. <u>Rivera</u> involved a 2013 roof repair accident when the plaintiff was working for a Miles subcontractor without a safety harness and fell through the roof causing severe and permanent injuries. <u>Rivera</u>, slip op. at 2-4. We held that Miles, the general contractor, owed a duty of care to the plaintiff as a matter of law because Miles assumed the duty under its contractual obligations to ensure that the plaintiff's employer followed OSHA and other fall prevention safeguards. <u>Id.</u> at 9. The probative value of the <u>Rivera</u> testimony is outweighed by its prejudicial impact by allowing the jury to hear about an accident where a Miles' employee was not the injured worker and, in this case, where Miles is no longer a defendant. And given Mizel was later precluded from opining that Miles' safety measures were incompetent, it would have been harmless to preclude evidence of the accident in the <u>Rivera</u> matter.

IV.

Rulings Prior To Directed Verdict

A. Law of the Case Doctrine Regarding Incompetent Contractor Claim

Valdez-Martinez argues Judge Rivas violated the law of case doctrine by dismissing his incompetent contractor claim that defendants were negligent for

hiring Miles. A prior judge (motion judge) denied summary judgment dismissal of the claim, finding there was an issue of fact concerning defendants' notice of the dangerous condition and whether Miles' previous OSHA violations existed, thus precluding judgment on the issue of defendants' duty. The motion judge reasoned the incompetent contractor claim, if successful, would preclude application of the hazard-incident exception to the general rule obligating a landowner to provide a safe workplace to invitees, such as Valdez-Martinez.

Our review of the record reveals the law of the case doctrine was not raised before Judge Rivas and thus should not be considered on appeal because it does not "go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Nevertheless, considering the doctrine, we conclude it does not apply to bar the judge's ruling.

The law of the case doctrine provides that "where there is an unreversed decision of a question of law or fact made during the course of litigation, such decision settles that question for all subsequent stages of the suit." Jacoby v. Jacoby, 427 N.J. Super. 109, 117 (App. Div. 2012) (citation and internal quotations omitted). The doctrine is "based upon the sound policy that when an issue is once litigated and decided during the course of a particular case, that

decision should be the end of the matter."  Musto v. Vidas, 333 N.J. Super. 52, 61 (App. Div. 2000) (citation omitted).  The doctrine "has no barring effect where the judge who is presiding over the trial on the merits has a newly developed basis in fact, law or context upon which to revisit a ruling made in the pre-trial stage."  Higgins v. Swiecicki, 315 N.J. Super. 488, 492 (App. Div. 1998) (alteration in original).

The motion judge's ruling was not a dispositive determination that the incompetent contractor claim could not be dismissed at trial.  A ruling that a question of fact exists precluding summary judgment, by its very nature, is not a "decision of a question of law or fact [that] settles that question," which would be subject to the law of the case doctrine.  "Denial of a motion for summary judgment is a determination that there is an undisposed of issue, not a disposition of the issue itself."  Seire v. Police & Fire Pension Comm'n, 4 N.J. Super. 230, 235 (App. Div. 1949); see also Blunt v. Klapproth, 309 N.J. Super. 493, 504 (App. Div. 1998) (alteration in original) ("Denial of summary judgment preserves rather than resolves issues; therefore, later reconsideration of matters implicated in the motion, including the reasons in support of the denial, are not precluded.").  Thus, "an order denying summary judgment is not subject to the law of the case doctrine because it decides nothing and merely reserves issues

for future disposition." Gonzalez v. Ideal Tile Importing Co., Inc., 371 N.J. Super. 349, 356 (App. Div. 2004), aff'd 184 N.J. 415 (2005).

Accordingly, we conclude Judge Rivas' dismissal of the incompetent contractor claim was not barred by the motion judge's prior ruling.

### B. Dismissal of the Incompetent Contractor Claim

Valdez-Martinez argues the judge erred in dismissing his incompetent contractor claim because he could have presented sufficient evidence that defendants should have known that Miles did not adhere to safety guidelines in performing its work, if Mizel's testimony about Miles' OSHA violations and the Rivera lawsuit was permitted. This contention fails based on our conclusion in the preceding subsection that the judge did not abuse his discretion to bar the testimony. Because Valdez-Martinez did not present any evidence that defendants should have known that Miles failed to follow safety guidelines, dismissal of the incompetent contractor claim was appropriate based on the facts developed at trial and the law.

### V.

### Defendants' Cross-Appeals

Defendants raise several contentions in their cross-appeals. They argue the judge abused his discretion in granting Valdez-Martinez' in limine motion to

exclude evidence (photos, supplemental reports, and surveillance video) they sought to submit as late amendments to discovery under Rule 4:17-7. Defendants also argue the judge erred in denying their in limine motions to preclude three aspects of Mizel's report and related testimony as net opinions.[8] Because we conclude the directed verdict in defendants' favor should not be disturbed, it is unnecessary to address their cross-appeal.

To the extent we have not addressed any of Valdez-Martinez' arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] Defendants specifically challenge Mizel's opinions that: (1) NAI was a prime or general contractor subject to OSHA at the time of the accident; (2) defendants were obligated to investigate Miles's possible OSHA violations; and (3) defendants violated applicable safety standards based on ANSI and NIOSH guidelines.