NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3990-22

N.A.R., INC., ASSIGNEE OF
FIRST WESTERN CREDIT,

     Plaintiff,

v.

EASTERN OUTDOOR
FURNISHINGS A/K/A
JC PARTNERS LLC,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

AMD DIRECT, INC.
D/B/A SUMMERSET
PROFESSIONAL GRILLS,

     Third-Party Defendant-
     Respondent.

> **APPROVED FOR PUBLICATION**
>
> **January 24, 2025**
>
> **APPELLATE DIVISION**

Argued January 6, 2025 – Decided January 24, 2025

Before Judges Sabatino, Gummer and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law
Division, Passaic County, Docket No. L-3511-20.

Marisa Rauchway Sverdlov argued the cause for appellant (Chiesa, Shahinian & Giantamosi PC, attorneys; Marisa Rauchway Sverdlov, on the briefs).

Christopher R. Carton argued the cause for respondent AMD Direct, Inc. D/B/A Summerset Professional Grills (Bowman and Brooke LLP, attorneys; Christopher R. Carton and Erica S. Mekles, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This commercial litigation mainly presents issues under the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. 56:10-1 to -15. As its principal claim in this case, defendant/third-party plaintiff Eastern Outdoor Furnishings ("Eastern Outdoor") contends that third-party defendant AMD Direct, Inc., ("AMD") violated the NJFPA in terminating Eastern Outdoor's alleged franchise to sell AMD's products. AMD denies that such a franchise relationship existed.

The trial court granted summary judgment to AMD, dismissing Eastern Outdoor's claims under the statute, upon specifically finding there was no "written agreement" establishing a franchise between the parties. Eastern Outdoor has appealed that decision, along with other rulings made by the trial court.

For the reasons that follow, we affirm the trial court's grant of summary judgment dismissing the NJFPA claims, albeit based on somewhat different reasoning. Specifically, we agree with Eastern Outdoor that to establish a franchise enforceable under the NJFPA the statute does not require a comprehensive and integrated "written agreement" between the parties. Instead, N.J.S.A. 56:10-3(a) more flexibly defines a franchise to consist of a "written arrangement" that also meets various other requirements. Nonetheless, it is clear the record—even when viewed in a light most favorable to Eastern Outdoor—fails to provide sufficient evidence to establish such a qualifying "written arrangement."

Consequently, we affirm summary judgment in AMD's favor dismissing the NJFPA claims. We also affirm related orders of the trial court respecting discovery and other matters. However, we are constrained to remand the case to the trial court to adjudicate Eastern Outdoor's claims of tortious interference and indemnification that were not expressly addressed in the trial court's decision.

A-3990-22

I.

Because the parties are well familiar with the factual contentions[1] and procedural history underlying this case, we need not detail them here. The following brief recitation will suffice for our purposes.

Eastern Outdoor is a New Jersey retailer of custom outdoor kitchens, including appliances. AMD is a manufacturer of outdoor grills. Starting in 2010, Eastern Outdoor began selling grills produced by AMD, among several other brands of grills. Eastern Outdoor displayed AMD grills at its showroom in Totowa. Eastern Outdoor purchased the grills and other products from AMD on a wholesale distributorship basis. Eastern Outdoor consulted with AMD on AMD's development of a line of "Summerset" grills, and marketing materials identified Eastern Outdoor as a distributor of that brand. In 2018, an estimated $600,000 to $700,000 of Eastern Outdoor's $3.3 million in total annual sales revenues were attributed to AMD products.

---

[1] Several volumes of appellant's appendix, which included certain financial information and deposition testimony, were filed under seal. At oral argument, appellant's counsel confirmed with us that appellant does not object to this court reciting information from those sealed materials in our opinion, as the reasons that prompted the sealing several years ago are no longer important. See R. 1:38-1A. Respondent's counsel agreed.

A-3990-22

In March 2019, AMD terminated Eastern Outdoor's wholesale distributorship in favor of a competitor. As explained to us at oral argument, AMD felt that Eastern Outdoor was not sufficiently focused on the sale of AMD grills and was instead more broadly engaged in marketing outdoor furniture and kitchen systems. AMD's chief executive officer Jeffrey Straubel testified at his deposition that Eastern Outdoor struggled for years to match the sales volume of other AMD grill distributors.

According to Eastern Outdoor, AMD's termination of its status as a wholesale distributor made it infeasible to continue purchasing AMD grills and meet customer orders. When it was notified of the termination, Eastern Outdoor possessed an inventory of AMD grills that it had ordered but had not yet paid for. According to Eastern Outdoor, AMD promised to take back the grills but failed to do so.

A collection agency, plaintiff N.A.R., Inc., as assignee of the purported debt, sued Eastern Outdoor in the Law Division to collect on the unpaid sums. In turn, Eastern Outdoor filed a third-party complaint against AMD alleging a violation of its franchise rights under the NJFPA. Eastern Outdoor also asserted claims of tortious interference with prospective business relations and common-law indemnification. Meanwhile, N.A.R. and Eastern Outdoor settled the

collection action. The third-party complaint continued to be litigated. Discovery ensued, with document production and depositions of company officials and other witnesses.

AMD moved for summary judgment and sought dismissal of the third-party complaint in its entirety. AMD also asked the court to bar Eastern Outdoor's expert and dismiss its claims because it could not establish damages. In an oral opinion issued on March 27, 2023, the trial court granted AMD's summary judgment motion, finding Eastern Outdoor could not prove the existence of what the court termed as a "written agreement," and thus failed to satisfy the first element of the NJFPA test for establishing a franchise.

Eastern Outdoor appeals from the summary judgment order, a companion order issued that same date denying as moot AMD's motion to bar Eastern Outdoor's expert, and the court's order dated July 17, 2023, denying reconsideration and relief under Rule 4:49-2.

On appeal, Eastern Outdoor argues the court erred by: (1) granting AMD's summary judgment dismissing the NJFPA, tortious interference, and indemnity claims; (2) denying Eastern Outdoor's motion to amend the summary judgment order because of new evidence obtained from a third party (who had failed to produce all documents in response to a subpoena); and (3) denying AMD's

expert motion as moot instead of with prejudice, given AMD's alleged violation of a case management order.

Fundamentally, Eastern Outdoor contends the NJFPA requires a written arrangement, not a written agreement, and that it established the existence of such a written arrangement through its submission of several documents. Eastern Outdoor further contends the trial court improperly dismissed its tortious interference and indemnity claims without any discussion or analysis within its oral opinion. AMD maintains the court properly construed the statute and rightly concluded that Eastern Outdoor had failed to show the existence of a franchisor-franchisee relationship between the parties.

In considering these arguments, we review the trial court's grant of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party" to decide whether "the moving party [was] entitled to judgment as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 540 (1995); R. 4:46-2(c).

II.

The NJFPA "provides franchisees protection against indiscriminate terminations by prohibiting cancellation or non-renewal of franchises for other than good cause." Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 340 (1992). "Good cause" is defined as "failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." N.J.S.A. 56:10-5. The NJFPA was prompted by "concerns [that] were raised about the degree of control the franchisor exercised over the franchisee, in particular, the franchisor's power of 'life or death' to terminate the franchise." Instructional Sys., 130 N.J. at 339.

The NJFPA defines a "franchise" as

> a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise.
>
> [N.J.S.A. 56:10-3(a) (emphasis added).]

Not all alleged franchises are covered by the Act, which applies only

> to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such

franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise; or [to a franchise car dealership].

[N.J.S.A. 56:10-4.]

In summary, based on the statutory requirements pursuant to N.J.S.A. 56:10-3(a) and N.J.S.A. 56:10-4(a), Eastern Outdoor must prove: (1) a written arrangement between Eastern Outdoor and AMD; (2) within that written arrangement, that AMD granted Eastern Outdoor "a license to use" its intellectual property; (3) the written arrangement reflected a "community of interest" between the parties; (4) the parties contemplated or required Eastern Outdoor to maintain a "place of business" within New Jersey; (5) "gross sales of products or services" between the parties exceeded $35,000 "for the 12 months next preceding the institution of suit pursuant to this act"; and (6) "more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise."

Eastern Outdoor argues the trial court misinterpreted the NJFPA to require a written agreement that grants a license. Eastern Outdoor asserts the NJFPA "does not require an agreement or contract, and that one or multiple writings could constitute a written 'arrangement' under the statute," as recognized by our

Supreme Court in <u>Instructional Systems</u>, 130 N.J. at 347. In this regard, Eastern Outdoor highlights this passage from <u>Instructional Systems</u>, which uses the plural term "written arrangements" in explaining when an enforceable franchise exists as a matter of law:

> Granted, there are cases that have held that the existence of a franchise is a question of law to be decided by a court. <u>See</u> <u>Kania v. Airborne Freight Corp.</u>, 300 N.W.2d 63, 70 ([Wis.] 1981) ("[I]n the absence of a claim of ambiguity, which might require extrinsic evidence, the construction of a written contract is only a question of law for the court."). However, we conclude that <u>that proposition applies only when the entire relationship between the parties may be deduced from their written arrangements.</u> <u>See</u> <u>Kinn v. Coast Catamaran Corp.</u>, 582 F.Supp. 682, 686 (E.D. Wis. 1984) (finding that written dealership agreement clearly and unambiguously conferred a non-exclusive distributorship); <u>see also</u> <u>Nebraska Im-Pruv-All, Inc. v. Sass</u>, 247 N.W.2d 924, 926 ([Neb.] 1976) (stating that in absence of sufficient factual issues, interpretation of contract to determine existence of franchise is matter of law).
>
> [<u>Id.</u> at 346–47 (emphasis added).]

In <u>Instructional Systems</u>, the Court further observed that "courts must attempt to determine on a 'case-by-case basis' the nature of the relationship and the just obligations of the parties to the franchise contract." <u>Id.</u> at 373. Although the statement presupposes the existence of a "franchise contract," the word "contract" in legal writing can refer to a written agreement or "conduct by both

10

parties which recognizes the existence of such a contract." N.J.S.A. 12A:2-204(1); accord Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 70, 71 (2024) ("an implied-in-fact contract may form based on the parties' actions, course of conduct, oral expressions, or a combination of the three," yet "despite the difference in the way the contracts are created, an implied-in-fact contract is generally 'as binding as [an] express contract'" (quoting Troy v. Rutgers, 168 N.J. 354, 365 (2001))).

We concur with Eastern Outdoor that the NJFPA's use of the term "written arrangement" in N.J.S.A. 56:10-3(a) conveys that a fully integrated and comprehensive written franchise agreement does not have to be executed to create a franchise under New Jersey law. Instead, a series of documents can suffice, provided they are documents in which the franchisor has granted the franchisee "a license to use a trade name, trade mark, service mark, or related characteristics," and also in which there is a "community of interest in the marketing of goods or services." Ibid. In addition, the fulfillment of requirements of a New Jersey place of business and the numerical gross sales criteria set forth in N.J.S.A. 56:10-4 must also be established.[2]

---

[2] Although the NJFPA is not based upon a uniform or model statute, we note that Delaware's franchise statute defines a franchise as "a contract or other

We are unpersuaded by AMD's argument that <u>Finlay & Associates, Inc. v. Borg-Warner Corporation</u>, 146 N.J. Super. 210 (Law Div. 1976), <u>aff'd</u>, 155 N.J. Super. 331 (App. Div. 1978), which was cited by the Supreme Court in <u>Instructional Systems</u>, 130 N.J. at 353, requires that franchisees prove a written and integrated contractual agreement to establish a franchise relationship under the NJFPA. <u>Finlay</u> concerned the relationship between Finlay and Associates, the purported franchisee, and a predecessor to Borg-Warner, the purported franchisor. 146 N.J. Super. at 215. The parties entered into a "written distributorship agreement" whereby Finlay would distribute Borg-Warner's products. <u>Ibid.</u> Finlay sued Borg-Warner under the NJFPA after Borg-Warner

---

arrangement" meeting certain criteria. DEL. CODE ANN. tit. 6, § 2551 (1970). Furthermore, albeit limited to motor vehicle franchises, New York's statute mirrors New Jersey's definition of "franchise" as "a written arrangement." N.Y. VEH. & TRAF. L. § 462(6) (McKinney 2009). A New York court has held "VTL § 462.6 uses the term 'written arrangement' to express the writing requirement. What document or combination of documents might constitute a 'written arrangement,' under the Act, is unknown." <u>JJLG Motors, Inc. v. SMS-Retail Corona</u>, 975 N.Y.S.2d 556, 562 (N.Y. Sup. Ct. 2013) (holding although a written agreement gave a franchisee the exclusive right to distribute the franchisor's products within a geographic region, the arrangement was not a franchise license because the agreement gave the franchisor no control, unequal bargaining power, or other characteristics of a franchise relationship); <u>see also</u> <u>Beck Chevrolet Co. v. Gen. Motors LLC</u>, 53 N.E.3d 706, 716 (N.Y. 2016) (observing that "other documents may be constituent parts of the parties' written arrangement" delineating the terms of a franchise).

allegedly had changed the product lines offered to Finlay for distribution from the products specified in the agreement. Ibid. The Law Division focused on the nature of the agreement between the parties in finding the NJFPA inapplicable, noting "[t]here is no written agreement granting a 'license' to [Finlay] from [Borg-Warner] to 'use' anything." Id. at 217. The agreement between Finlay and Borg-Warner placed "no controls . . . on it in manner of operation or sales, or specific location." Ibid. The Law Division found the mere distribution of advertising materials to be insufficient to create a franchise:

> Mere furnishing of advertising materials as contemplated by the distributorship agreement, and allowing plaintiff to have its name placed on certain items, if it wished, as advertising (plaintiff using its own business name) for their own benefit does not fulfill the letter or intent of the Franchise Practices Act. . . . Distributing advertising materials of another's products, with or without plaintiff's name, or having those materials available, including catalogs, or participating in advertising or listing advertisements that certain individuals or businesses sell certain products, is not what is meant by a license to use the various items referred to in the statute.
>
> [Id. at 219.]

Even so, Finlay does not signify that a fully integrated written franchise contract must be executed to satisfy the NJFPA's definition of a "written

arrangement."  The plaintiff in <u>Finlay</u> failed not because of the form of the writing between the parties, but rather due to the substance of their relationship.

We need not rely on the federal cases and Federal Trade Commission materials cited to us by Eastern Outdoor to determine from the text of the NJFPA that a claimant must prove a written arrangement evidencing a franchise rather than a written agreement.  The trial court erred in its oral opinion by using the terms synonymously.  Nonetheless, we conclude the assortment of documents presented by Eastern Outdoor fall short of establishing such a qualifying written arrangement, even when they are viewed in a light most favorable to Eastern Outdoor.

Eastern Outdoor points to various documents as evidence that allegedly satisfies the written arrangement statutory requirement:  (1) invoices; (2) a 2009 email describing AMD and Eastern Outdoor as "trusted partners," and other various emails; (3) certain "AMD-owned websites" referring to Eastern Outdoor as the "point of contact, distributor, Director of Sales, or the like"; (4) catalogs designed by AMD entitled "Summerset . . . by Eastern Outdoor"; and (5) a letter referencing the "distributor arrangement" between the parties.  Although these documents reflect the history of the parties' business relationship and Eastern Outdoor's role as a wholesale distributor of AMD grills, they do not satisfy the

NJFPA's requirement of a writing in which AMD "grant[ed] . . . a license to [Eastern Outdoor] to use [its] trade name, trade mark, service mark, or related characteristics." N.J.S.A. 56:10-3(a).[3] Evidently, Eastern Outdoor made use of AMD's logos and other intellectual property in selling the AMD grills as a wholesale distributor. But nothing in the record demonstrates the grant of a license to do so was ever conveyed in writing. A distribution agreement or relationship is insufficient to establish a franchise under the NJFPA. Finlay, 146 N.J. Super. at 219.

In particular, the January 19, 2009 email from Straubel to Eastern Outdoor's president, which appellant has cited to us as a key document reflecting the parties' relationship, did not establish or substantiate a franchise. The email, transmitted nearly a decade before AMD ended Eastern Outdoor's wholesale distributorship in 2019, bespeaks an informal mutual desire to grow their business together as "trusted partners in this endeavor." Although that aspirational terminology may be indicative of a possible joint business venture, it is not akin to the relationship between a dominant franchisor granting specified rights to a subordinate franchisee.

---

[3] We assume, without deciding, that a trier of fact could view the writings as bespeaking a "community of interest" between the parties, which is independent of the license requirement within N.J.S.A. 56:10-3(a).

A-3990-22

It is undisputed that AMD never sought or exerted control over Eastern Outdoor's marketing and sale of AMD grills, and that AMD never had access to or reviewed financial records of Eastern Outdoor. Further, AMD's corporate representative, Straubel, testified that AMD had at least one other distributor of AMD products in New Jersey. The course of dealings does not reflect a franchise relationship substantiated by, as the statute requires, a qualifying written arrangement or arrangements.

Summary judgment on this pivotal element was appropriately granted, and there is no need to have a jury attempt to make the legal assessment[4] of whether a qualifying written arrangement was established.

Because the writings cited by Eastern Outdoor fall short of the written arrangement(s) required by N.J.S.A. 56:10-3(a), we do not need to evaluate whether the record satisfies the 20% numerical gross sales requirement of N.J.S.A. 56:10-4(3) for the applicable twelve-month period.[5]

---

[4] Notably, there is no model civil jury charge on the subject, which may be indicative of the inherently judicial nature of the evaluation of the writings.

[5] AMD acknowledges that appellant maintains a place of business in New Jersey satisfying N.J.S.A. 56:10-4(1) and that Eastern Outdoor met the $35,000 gross sales criterion of N.J.S.A. 56:10-4(2).

A-3990-22

Based on the above, we affirm the trial court's dismissal of Eastern Outdoor's franchise claims under the NJFPA, albeit for different reasons than those stated by the trial court. An order will be affirmed on appeal if it is correct, even if we do not adopt the specific reasoning of the trial judge. State v. McLaughlin, 205 N.J. 185, 195 (2011); see also Isko v. Planning Bd. of Livingston Twp., 51 N.J. 162, 175 (1968) (appellate court may affirm judgment on different grounds than set forth below). We furthermore discern no reason to disturb the trial court's related rulings concerning discovery, expert opinion on damages, and the denial of relief under Rule 4:49-2.

That said, the trial court's decision lacks any analysis of Eastern Outdoor's non-statutory claims of tortious interference and indemnification. The court was required to issue a statement of reasons explaining why it dismissed those claims. R. 1:7-4. We remand the case for the limited purpose of requiring the trial court to adjudicate those claims with adequate reasons. Because the motion judge has since retired, a successor judge shall be assigned the task, and that judge will have the prerogative to invite further briefing and argument limited to those issues.

To the extent we have not addressed them, all other points raised on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

A-3990-22

Affirmed in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION